# United States Court of Appeals

*for the*

# Eighth Circuit

---

Case No. 25-1772

GERI BACHMAN,

*Plaintiff-Appellant,*

– v. –

HICKMAN MILLS SCHOOL DISTRICT; YAW OBENG, In their official and personal capacities; DERRICK JORDAN, SR., In their official and personal capacities; CAROL GRAVES, In their official capacities as Directors of the Board of Education; BYRON TOWNSEND, In their official capacities as Directors of the Board of Education; IRENE C. KENDRICK, In their official capacities as Directors of the Board of Education; BETH BOERGER, In their official capacities as Directors of the Board of Education; BRANDON WRIGHT, In their official capacities as Directors of the Board of Education; ANN E. COLEMAN, In their official capacities as Directors of the Board of Education,

*Defendants-Appellees.*

---

ON APPEAL FROM AN ORDER ENTERED IN U.S. DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI - KANSAS CITY IN CASE NO. 4:23-CV-00931-FJG, FERNANDO J. GAITAN, JUNIOR, U.S. DISTRICT JUDGE

## BRIEF FOR PLAINTIFF-APPELLANT

JONATHAN R. WHITEHEAD
WHITEHEAD LAW OFFICE
*Attorneys for Plaintiff-Appellant*
229 S.E. Douglas Street, Suite 210
Lee's Summit, MO 64063
(816) 398-8305

CP COUNSEL PRESS    (800) 4-APPEAL • (624607)

## Summary of the Case

A public school may not fire a teacher with religious objections to a "gender-identity" compelled-speech policy, while letting other staff and records use the very terms the teacher asked to say. The First Amendment forbids it.

Geri Bachman taught girls' physical education for more than two decades. In 2021, she took a position at Smith-Hale Middle School in the Hickman Mills School District. In her Christian faith, Bachman cannot say that anyone has a "gender identity" apart from God's assigned sex. This would be lying, she believes, which God condemns. Two girls in her Girls' P.E. class asked Bachman to speak of them as boys. Bachman spoke respectfully but did not speak of them as boys. Other teachers and records addressed them as girls. But the District said religious accommodation was impossible, and that she must "acknowledge students' right of choice." Bachman objected and was let go.

A school might balance students' 'gender identities and teachers' religious freedoms in many ways. But *ad-hoc* student-defined speech codes for each teacher are indefensible. Yet the district court dismissed every claim under Rule 12(b)(6), labeling the policy neutral and Bachman's speech an "official duty." She now seeks reversal. **Oral argument is requested**.

# TABLE OF CONTENTS

Summary of the Case ................................................. i

Table of Contents ................................................. ii

Table of Authorities ................................................. iv

Jurisdictional Statement ................................................. 1

Statement of Issues ................................................. 2

Statement of the Case ................................................. 4

    I.   Appellant Bachman's faith prevents her from saying anyone has a "gender identity" apart from their Divinely-assigned sex. ................................................. 4

    II.   Hickman Mills and its administrators set a government policy ................................................. 6

    III.   Bachman is terminated for refusing to speak and violate her faith. ................................................. 7

    IV.   Defendants' policy works like a compelled speech code. ................................................. 11

    V.   The lower court dismissed Bachman's claims, and she timely appealed. ................................................. 14

Summary of the Argument ................................................. 16

Argument ................................................. 20

    I.   Bachman states a Free Exercise claim; the District's policy is not "neutral or generally applicable." ................................................. 20

        A.   The standard of review is *de novo*. ................................................. 20

        B.   Punishing a religious teacher for her "gender identity" silence or statements, while exempting colleagues, states a Free Exercise claim. ................................................. 20

        C.   The lower court applied rational basis review, and the Defendants have not shown the policy meets strict scrutiny. ................................................. 31

II.  Bachman states a free speech claim; the District cannot compel a teacher to express agreement with a student's discretionary message. ............................... 32

    A.    The standard of review is *de novo*. ........................................................ 32

    B.    The First Amendment protects teachers against government speech rules that prohibit speech outside school, between parents and teachers................ 32

    C.    The First Amendment prohibits public schools from requiring teachers to adopt beliefs they do not hold or to say untrue things. .................................... 33

    D.    The student-imposed speech code required Bachman's personal statement of agreement; it did not arise from the "official duties" of a Girls' Physical Education teacher.............................................................................. 37

III.  Bachman states Title VII claims; the District discriminated against Bachman and retaliated for her complaints about its discriminatory policy. ...................... 42

    A.    The standard of review is *de novo*; pleadings here must contain plausible support but not necessarily state each element of a prima facie case................ 42

    B.    Bachman states a Title VII disparate treatment claim............................ 42

    C.    Bachman pleaded a Title VII discrimination claim based on Hickman's refusal to consider accommodation, but the lower court improperly found all accommodations would be "undue hardship" as a legal matter....................... 47

    D.    Bachman states a Title VII retaliation claim because she pleads her reprimand was elevated to a termination after she pointed out the policy's uneven application. ........................................................................................51

IV.  Bachman pleaded state-law claims religious liberty violations, and the lower court should have offered a chance to replead. ................................................... 53

    A.    The standard of review is *de novo* for claims, and abuse of discretion for dismissing with prejudice. ........................................................................ 53

    B.    Bachman's other claims should be reinstated. ...................................... 53

    C.    The lower court abused its discretion in dismissing with prejudice. ...... 57

Conclusion .......................................................................................................... 59

Certificates......................................................................................................... 61

## Cases

*303 Creative LLC* v. *Elenis*, 600 U.S. 570 (2023)............................................2, 33, 34

*Abington* v. *Schempp*, 374 U.S. 203 (1963) .............................................................. 22

*Alabama* v. *U.S. Sec'y of Educ.*, No. 24-12444, 2024 WL 3981994  (11th Cir. Aug. 22, 2024).................................................................................................. 47-50

*Ashcroft* v. *Iqbal*, 556 U.S. 662 (2009) ..................................................................... 20

*Beasley* v. *Warren Unilube, Inc.*, 933 F. 3d 932 (8th Cir. 2019) ............................... 43

*Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544 (2007) ...................................................... 20

*Bostock* v. *Clayton County*, 590 U.S. 644 (2020) ...................................................... 12

*Braden* v. *Wal-Mart Stores, Inc.*, 588 F. 3d 585 (8th Cir. 2009) .............................. 20

*Brandon* v. *Bd. of Educ. of City of St. Louis*, No. 4:22-CV-00635-SRC, 2023 WL 4104293 (E.D. Mo. June 21, 2023) ..................................................................... 56

*Brokken* v. *Hennepin Cnty.*, No. 24-1914, 2025 WL 1585294 (8th Cir. June 5, 2025) ..........................................................................................................................48, 51

*Carton* v. *General Motor Acceptance Corp.*, 611 F. 3d 451 (8th Cir. 2010) ................ 20

*Church of the Lukumi Babalu Aye, Inc.* v. *City of Hialeah*, 508 U.S. 520 (1993).......... .................................................................................... 2, 17, 23, 24, 25, 29, 31

*Cole* v. *Grp. Health Plan, Inc.*, 105 F. 4th 1110 (8th Cir. 2024) ......................... 46, 47

*Connick* v. *Myers*, 461 U.S. 138 (1983) ..................................................... 35

*Crawford* v. *Metro. Gov't of Nashville and Davidson Cty.*, 555 U.S. 271 (2009) ...........

.................................................................................................................19, 52

*E.E.O.C.* v. *Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015) .. 2-3, 18, 28, 43, 47

*E.E.O.C.* v. *Kroger Ltd. Partnership I*, 608 F. Supp. 3d 757 (E.D. Ark. 2022) ......... 52

*Forsyth Cty.* v. *Nationalist Movement*, 505 U.S. 123 (1992) ..................................... 31

*Fulton* v. *City of Philadelphia*, 593 U.S. 522 (2021) ................. 2, 17, 21, 23-24, 29, 32

*Garcetti* v. *Ceballos*, 547 U.S. 410 (2006) ................................................. 34, 35, 38, 39

*Geraghty* v. *Jackson Loc. Sch. Dist. Bd. of Educ.*, No. 5:22-CV-02237, 2024 WL
3758499 (N.D. Ohio Aug. 12, 2024) ........................................................ 38, 39, 41

*Gibson* v. *Am. Greetings Corp.*, 670 F. 3d 844 (8th Cir. 2012) .................................. 43

*Givhan* v. *Western Line Consol. School Dist.*, 439 U.S. 410 (1979) ........................... 35

*Groff* v. *DeJoy*, 600 U.S. 447 (2023) ...........................................................2, 18, 49

*Henley* v. *Brown*, 686 F. 3d 634 (8th Cir. 2012) ...................................................... 56

*Hosanna-Tabor Evangelical Lutheran Church & Sch.* v. *E.E.O.C.*, 565 U.S. 171 (2012)

...................................................................................................................... 23

*In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F. 3d 1200 (8th
Cir.2010) ....................................................................................................... 53

*Ingram* v. *Arkansas Dep't of Correction*, 91 F. 4th 924 (8th Cir. 2024) ...............42, 51

*Jackler* v. *Byrne*, 658 F. 3d 225 (2d Cir. 2011) ........................................................ 35

*Janus* v. *Am. Fed'n of State, Cnty., & Mun. Emps., Council 31,* 585 U.S. 878 (2018) ...

.......................................................................... 2, 18, 34, 35, 36, 37, 38

*Jones* v. *TEK Indus. Inc.*, 319 F. 3d 355 (8th Cir. 2003) .......................................... 48

*Kennedy* v. *Bremerton Sch. Dist.*, 597 U.S. 507 (2022) ........................ 2, 21, 35, 36, 37

*Kluge* v. *Brownsburg Comm. Sch. Corp.*, 432 F. Supp. 3d 823 (S.D. Ind. 2020) ...........

.................................................................................... 40, 41, 48

*Kluge* v. *Brownsburg Comm. Sch. Corp.*, 732 F. Supp. 3d 943 (S.D. Ind. 2024) ...........

.................................................................................... 40, 41, 49

*Kluge* v. *Brownsburg Comm. Sch. Corp.,* No. 24-1942. (7th Cir. 2024)(May 31, 2024)

.......................................................................................... 40

*Knapp* v. *Hanson*, 183 F. 3d 786 (8th Cir. 1999) ..................................................... 20

*Masterpiece Cakeshop* v. *Colorado C.R. Comm'n*, 584 U.S. 617 (2018) ........................

.............................................................................. 2, 17, 23, 26, 27, 32

*McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973) ..................... 3, 43, 44, 45, 46

*McGinnis* v. *Union Pac. R.R.*, 496 F. 3d 868 (8th Cir. 2007) .................... 3, 43, 44, 45

*Michaelis* v. *Neb. State Bar Ass'n*, 717 F. 2d 437 (8th Cir. 1983) ............................. 57

*Norgren* v. *Minnesota Dep't of Hum. Servs.*, 96 F. 4th 1048 (8th Cir. 2024)............ 47

vi

*Pet Quarters, Inc.* v. *Depository Tr. & Clearing Corp.*, 559 F. 3d 772 (8th Cir. 2009) ............................................................................3, 57

*Ricard* v. *USD 475 Geary Cnty., KS Sch. Bd.*, No. 5:22-CV-04015-HLT-GEB, 2022 WL 1471372, at *6 (D. Kan. May 9, 2022) ...................................... 32-33

*Rodgers* v. *U.S. Bank, N.A.*, 417 F. 3d 845 (8th Cir. 2005) ...................................... 44

*Roth* v. *United States*, 354 U.S. 476 (1957) .............................................................. 36

*Sherbert* v. *Verner*, 374 U.S. 398 (1963) ....................................................... 27, 28, 29

*Slattery* v. *Swiss Reinsurance Am. Corp.*, 248 F. 3d 87 (2d Cir.2001) ............... 44, 45

*State ex rel. Church & Dwight Co.* v. *Collins*, 543 S.W.3d 22 (Mo. 2018) .............3, 55

*State of Tenn., et al.* v. *U.S. Dep't of Educ.*, No. 3:21-cv-308 (E.D. Tenn.) (July 15, 2022) ....................................................................................................................13

*State of Texas* v. *Cardona*, No. 4:23-cv-604 (N.D. Tex.) (June 11, 2024) ...............13

*Tennessee* v. *Cardona*, 737 F. Supp. 3d 510 (E.D. Ky. 2024) .................................. 36

*Tennessee* v. *McMahon*, No. 24-5588, 2025 WL 848197 (6th Cir. Mar. 18, 2025) ... 36

*Texas Dep't of Cmty. Affs.* v. *Burdine*, 450 U.S. 248 (1981) .............................. 44, 45

*Tinker* v. *Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969) .....................16, 34

*Torgerson* v. *City of Rochester*, 643 F. 3d 1031 (8th Cir. 2011) .................................. 44

*United States* v. *Skrmetti*, 145 S. Ct. 1816, 1834 (2025)...................................... 28, 50

*Vining* v. *Probst*, 186 S.W.2d 611 (Mo.App.W.D. 1945)........................................3, 55

*West Virginia State Bd. of Educ.* v. *Barnette*, 319 U.S. 624 (1943) ............ 2, 33, 34, 37

*Wieman* v. *Updegraff*, 344 U.S. 183 (1952) .......................................................... 2, 35

*Willey* v. *Sweetwater County Sch. Dist.*, No. 23CV-0069-SWS, 2023 WL 9597101

   (D.Wyo. Dec. 18, 2023) ........................................................................ 40, 41, 42

*Wooley* v. *Maynard*, 430 U.S. 705 (1977) ................................................................. 33

## STATUTES & CONSTITUTIONS

§ 213.070, RSMo......................................................................................................... 55

§1.302, RSMo. ............................................................................................................. 54

§160.2500, RSMo. ....................................................................................................... 54

28 U.S.C. § 1291 ........................................................................................................... 1

42 U.S.C. § 2000e(j)...................................................................................................... 28

42 U.S.C. § 2000e-2(a).................................................................................................. 42

Mo. Const. art. I, §§ 2, 5 & 10 ................................................................................... 54

U.S. Const. Amend. I .................................................................................................. 21

<u>**JURISDICTIONAL STATEMENT**</u>

This appeal arises from an order by the U.S. District Court for the Western District of Missouri on March 29, 2024, granting Defendants' motion to dismiss all claims of Plaintiff Geri Bachman. The order and accompanying clerk's judgment disposed of all parties and claims, so it is a final decision under 28 U.S.C. § 1291.

Bachman timely filed an appeal notice on April 26, 2024, within the 30-days prescribed by Fed. R. App. P. 4(a)(1)(A).

This Court has jurisdiction under 28 U.S.C. § 1291, which confers appellate jurisdiction over a district court's final decisions.

1. Whether a Free Exercise claim is stated where a school district enforces its gender-identity speech rule against a religious teacher, while allowing administrators and other teachers to use the very words she proposed? *Fulton* v. *City of Philadelphia*, 593 U.S. 522 (2021); *Kennedy* v. *Bremerton Sch. Dist.*, 597 U.S. 507 (2022); *Church of the Lukumi Babalu Aye, Inc.* v. *City of Hialeah*, 508 U.S. 520 (1993); *Masterpiece Cakeshop* v. *Colorado C.R. Comm'n*, 584 U.S. 617 (2018).

2. Whether a Free Speech claim is stated when a public school compels a teacher, on pain of termination, to break silence and speak consistent with a student-dictated 'gender identity' in conflict with her religious convictions? *303 Creative LLC* v. *Elenis*, 600 U.S. 570 (2023); *Janus* v. *AFSCME*, 585 U.S. 878 (2018); *West Virginia State Bd. of Educ.* v. *Barnette*, 319 U.S. 624 (1943); *Wieman* v. *Updegraff*, 344 U.S. 183 (1952).

3. Whether a Title VII disparate impact and/or retaliation claim is stated when a public school denies a teacher's religious accommodation, allows other employees to use the same words, then fires the teacher after she pointed out her employer's inconsistent failure to accommodate her religious beliefs? *Groff* v. *DeJoy*, 600 U.S. 447 (2023); *E.E.O.C.* v. *Abercrombie & Fitch Stores*,

*Inc.*, 575 U.S. 768 (2015), *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792(1973), *McGinnis* v. *Union Pac. R.R.*, 496 F. 3d 868 (8th Cir. 2007).

4. Whether a teacher fired for refusing to speak against her conscience states claims under Missouri's religious-liberty laws, and whether all her claims should have been dismissed with prejudice? *Vining* v. *Probst*, 186 S.W.2d 611 (Mo.App.W.D. 1945); *State ex rel. Church & Dwight Co.* v. *Collins*, 543 S.W.3d 22 (Mo. 2018); *Pet Quarters, Inc.* v. *Depository Tr. & Clearing Corp.*, 559 F. 3d 772 (8th Cir. 2009).

This case concerns a public-school teacher who was fired for adhering to her religious convictions. That teacher, Geri Bachman, is a veteran educator and devout Christian. App. 12; R. Doc. 1, at 5, ¶ 36. She sought to serve all students with dignity consistent with her faith. App. 13; R. Doc. 1, at 6, ¶ 42-5. This same faith says sex is a divine, unchangeable gift. App. 13; R. Doc. at 6, ¶ 39. She cannot lie about that simple truth. App. 13; R. Doc. 1, at 6, ¶ 40.

## I.    Appellant Bachman's faith prevents her from saying anyone has a "gender identity" apart from their Divinely-assigned sex.

Mrs. Bachman is a committed Christian who strives to embody her faith each day. App. 12; R. Doc. 1, at 5, ¶ 36. These religious principles shape her beliefs about human nature, marriage, gender, sexuality, morality, politics, and social issues. App. 12; R. Doc. 1, at 5, ¶ 37. This faith also lays down definite standards for human conduct. App. 13; R. Doc. 1, at 6, ¶ 38.

These convictions teach her that sex is an immutable gift from God. So Bachman believes God creates everyone as male or female and that denying biological sex rejects God's plan. App. 13; R. Doc. 1, at 6, ¶ 39. Further, Scripture forbids falsehood, and it would be false to say a female is a male, or *vice versa*. App. 13; R. Doc. 1, at 6, ¶ 40. And she would sin herself, if she speaks to approve someone else's rejection of their own male or female sex. App. 12; R. Doc. 1, at 5, ¶ 41. Her

4

faith calls her to treat every person with dignity, love, and care – and love and care requires telling the truth about these realities. App. 13; R. Doc. 1, at 6, ¶ 42-5.

Mrs. Bachman's professional experience reinforces these beliefs. Based on scientific evidence and years in the classroom, Mrs. Bachman understands that children lack the maturity to grasp a transition's long-term consequences. App. 13; R. Doc. 1, at 6, ¶ 46. Therefore, she avoids encouraging 'social transitions,' such as the use of new names and pronouns inconsistent with a child's sex, believing they do not help, and may encourage irreversible harm. App. 13-4; R. Doc. 1, at 6-7, ¶¶ 47-52. She also observes that human sex is a binary defined by reproductive organization. App. 15; R. Doc. 1, at 8, ¶ 53.

Forcing Bachman to say words that she does not want to say will harm her, and help nobody else. Bachman understands the best evidence shows that speech to support "social transition" is scientifically unlikely to alleviate gender dysphoria and may encourage irreversible medical interventions. App. 15; R. Doc. 1, at 8, ¶¶ 56-57. If the District forced Bachman to say certain girls are boys, it would violate her faith and could encourage students to take actions that harm them. App. 15; R. Doc. 1, at 8, ¶¶ 54-55, 58-59.

Forcing Bachman to speak inside school affects her speech outside school. App. 23; R. Doc. 1 at 16, ¶ 129. After all, if she participates in a "social transition"

in class, but elsewhere says it is harmful, students might identify her as a hypocrite or liar, willing to say harmful things at work. App. 15; R. Doc. 1, at 8, ¶¶ 58-59. Bachman's beliefs do not require her to discriminate against students or distract from her classroom teaching. App. 16; R. Doc. 1, at 9, ¶ 60. Here, she merely seeks to refrain from speech that contradicts her sincere beliefs. App. 23; R. Doc. 1, at 16, ¶ 128.

## II.    Hickman Mills and its administrators set a government policy.

Defendant Hickman Mills C-1 School District is a public school district in southern Kansas City, Jackson County, Missouri. App. 10; R. Doc. 1, at 3, ¶ 23. It has several layers of authority.

First, the Board controls the District's schools, under law. App. 11; R. Doc. 1, at 4, ¶ 25. It appoints the District's officers, agents, and employees. App. 11; R. Doc. 1, at 4, ¶ 27.

Next, Defendant Yaw Obeng, the District's Superintendent, is the Board's chief executive officer. So Obeng executes Board policies and communicates them to employees and students. App. 11; R. Doc. 1, at 4, ¶ 28. The Board allows the Superintendent to control staff within Board policies. App. 11; R. Doc. 1, at 4, ¶ 29.

Then, Defendant Derrick Jordan, Sr., is Smith-Hale Middle School's principal. He supervised Mrs. Bachman. App. 11; R. Doc. 1, at 4, ¶ 30. The school's

chief administrator, Jordan oversees students and manages staff within Board policies and the Superintendent's rules. App. 11; R. Doc. 1, at 4, ¶ 30. Jordan supervises and disciplines faculty at Smith-Hale Middle. App. 12; R. Doc. 1, at 5, ¶ 32.

This authority backed Principal Jordan's gender identity "directive" to Bachman: "address students by their preferred names and pronouns." *See* App. 39; R. Doc. 11, at 1 (Def's. Suggestions). Principal Jordan also barred Bachman from speaking with parents about their student's identity claims. App. 20; R. Doc. 1, at 13, ¶¶ 101-102. Superintendent Obeng and the Board ratified Jordan's policies. App. 17, R. Doc 1, at 17, ¶ 74.

## III. Bachman is terminated for refusing to speak and violate her faith.

Mrs. Bachman is a well-qualified, well-regarded physical education teacher. In the 2021-22 school year, she taught 7th and 8th Grade Girls' Physical Education at Smith-Hale Middle School. App. 12; R. Doc. 1, at 5, ¶ 35.

Bachman knew gender identity issues were controversial. She had asked administrators if any policy governed the topic. On October 7, 2021, Principal Derrick Jordan summoned Mrs. Bachman to a meeting. He directed her to use whatever names and pronouns her students chose. App. 17; R. Doc. 1, at 10, ¶ 76. Mrs. Bachman explained that her Christian faith forbade her to call girls boys or boys

girls. App. 17; R. Doc. 1, at 10, ¶ 77. So, she proposed using gender-neutral terms or the legal names in school records instead. App. 17; R. Doc. 1, at 10, ¶ 78. Bachman left believing Jordan had agreed, though Jordan later denied it. App. 17; R. Doc. 1, at 10, ¶¶ 79-80.

In any event, Bachman taught her class for several months without incident. App. 17; R. Doc. 1, at 10, ¶ 81.

But on January 26, 2022, Jordan called her to a meeting. He said two student complaints "indicated your refusal to address these students by the gender they have identified." App. 18; R. Doc. 1, at 11, ¶ 82. One student alleged Bachman had said, "You know God made you in a beautiful and amazing way," tying Bachman's position to her faith. App. 18; R. Doc. 1, at 11, ¶ 83. Bachman later said she did not reference God in class specifically. She did recall saying that girls were "fearfully and wonderfully made," which the student apparently took to be a religious idea. *See* Psalm 139:14a ("I will praise thee; for I am fearfully and wonderfully made…").

But Bachman told Principal Jordan again that she could not speak of girls as boys. App. 19; R. Doc. 1, at 12, ¶ 84.

Jordan ordered her to speak of females as males. App. 19; R. Doc. 1, at 12, ¶ 84; *see also* App. 18; R. Doc. 1, at 11, ¶ 89-90.

Bachman told Jordan this policy seemed unfair; the demand was not based in the Girls P.E. curriculum. App. 23, R. Doc. 1 at 16, ¶ 127. It did not seem like Principal Jordan was trying to address a student concern, as much as trying to put her in a dilemma. Teachers had received no uniform policy or guidance on this issue. App. 19, R. Doc. 1 at 12, ¶ 96. Indeed, the District's own data contradicted the students' demands. App. 18; R. Doc. 1, at 11, ¶ 88. The District's digital, official records for all teachers showed these students as females. App. 18; R. Doc. 1, at 11, ¶ 84-88. The District made no effort to understand the big picture by involving parents or doctors. App. 19-20, R. Doc. 1, at 12-13, ¶ 96, 101. The District did not ask healthcare professionals for a diagnosis of "gender dysphoria." App. 20; R. Doc. 1, at 13, ¶ 101. And the District had made no effort to take the teachers' concerns into account.

Given this unfairness, Bachman asked for her beliefs to be considered and accommodated. She offered to use gender neutral pronouns or keep using the identity in the District's own computers, which would satisfy her concerns in this situation. App. 18; R. Doc. 1, at 11, ¶ 88.

Next, Jordan issued a formal reprimand letter on February 9, 2022. It said Mrs. Bachman was insubordinate and unprofessional. App. 19; R. Doc. 1 at 12, ¶ 93. It said she violated "students' right of choice." App. 18-9; R. Doc. 1, at 11-12, ¶¶ 89-

90. Jordan cited generic Board policies that did not reference gender identity, but the only clear "policy" was his own directive. App. 19; R. Doc. 1, at 12, ¶ 92-4. Jordan warned that this reprimand would be placed in her personnel file. App. 19; R. Doc. 1, at 12, ¶ 95.

On February 14, 2022, Bachman delivered a short rebuttal. App. 20; R. Doc. 1, at 13, ¶ 96. It affirmed her love for all students. It said there was no written documentation that either student wanted to be known as a boy. It said the District's computers still referred to the students as female. She added that the District could place boys in Boys' P.E., not the Girls' P.E. class. App. 19; R. Doc. 1, at 12, ¶ 96. If treating the student as a girl caused upset, she reasoned, the District could alleviate everyone's concern (including hers) by assigning them to a class consistent with their claims. *See* App. 19-20; R. Doc. 1, at 12-13, ¶¶ 97-100.

Even more telling, Bachman discovered that the students' demands varied by teacher, App. 20; R. Doc. 1, at 13, ¶¶ 97-100, and the District took no steps to ensure any consistency. App. 19-20; R. Doc. 1, at 12-13, ¶¶ 84-88, 96, 101. One girl went by her original name and female sex in some classes. App. 20; R. Doc. 1, at 13, ¶¶ 97-100. She used a third, gender-neutral name with another teacher. App. 20; R. Doc. 1, at 13, ¶ 98. Thus, at least some other teachers and the District itself were allowed to address the student as a "girl." Other employees did not have to treat the students

as boys, a right to remain silent that was denied to Bachman. App. 20; R. Doc. 1, at 13, ¶ 98

Additionally, Mrs. Bachman asked to speak to the students' parents about the claims, outside school, but Jordan forbade it. App. 20; R. Doc. 1, at 13, ¶¶ 101-102. This, again, seemed like an attempt to silence and shame Bachman, not an attempt to get all the facts necessary to help students.

Nevertheless, although Bachman tried to show that the policy was improper, the District refused to correct course. Principal Jordan notified Bachman on March 14, 2022, that he would recommend she be let go at year-end, due to the gender identity directive. App. 20; R. Doc. 1, at 13, ¶ 109.

On March 25, 2022, the Board voted to not renew her contract, as Principal Jordan and Superintendent Obeng recommended. App. 21; R. Doc. 1, at 14, ¶¶ 110-111. This same Board later ratified Jordan and Obeng's gender identity policy as District policy App. 21; R. Doc. 1, at 14, ¶ 113. So, Mrs. Bachman's employment terminated July 31, 2022. App. 21; R. Doc. 1, at 14, ¶ 112.

## IV.    Defendants' policy works like a compelled speech code.

Bachman and Defendant agree on the directive: Principal Jordan ordered "all teachers [to] address students by their preferred names and pronouns." *See* App. 39; R. Doc. 11, at 1 (Def's. Suggestions). Mrs. Bachman says Jordan also barred her from

speaking with parents about the student's identity claims. App. 20; R. Doc. 1, at 13, ¶¶ 101-102.

Defendants say they applied their policy to all teachers equally. *See* App. 49; R. Doc. 11 at 11 ("Plaintiff does not allege other teachers were permitted by Defendants to refer to students by their non-preferred names…"). But this is artful misdirection. When the District says no other teachers were allowed to use "non-preferred" names, that is only because the District made individualized, inconsistent demands of each teacher. App. 19-20; R. Doc. 1, at 12-13, ¶¶ 97-100. Bachman merely received demands made of no other teacher (so far as she knows).

On its face, the policy carves out non-teachers, like school administrators. App. 19-20; R. Doc. 1, at 12-13, ¶¶ 84-88, 96. Bachman pleads that administrators did not apply the policy to themselves. *See* App. 21; R. Doc. 1, at 14, ¶ 107.

And teachers faced inconsistent demands, despite the claimed general applicability. App. 31; R. Doc. 1, at 24, ¶ 205. *See also* App. 20; R. Doc. 1, at 13, ¶ 98.

Defendants have advanced differing justifications and interests for their policy. In his memo to Bachman, Principal Jordan said teachers must yield to the students' "choice[s]." App. 8; R. Doc. 1, at 1, ¶ 3.

Later, once litigation commenced, lawyers for the District claimed *Bostock* v. *Clayton County*, 590 U.S. 644 (2020) required the policy and prevented them from

accommodating Bachman's beliefs as a matter of law. It says her religious request was "simply to allow her to engage in discriminatory behavior." App. 54; R. Doc. 11, at 16. They also cited an Executive Order, Exec. Order No. 14,021, 86 Fed. Reg. 13,803 (Mar. 8, 2021) (*Guaranteeing an Educational Environment Free From Discrimination on the Basis of Sex, Including Sexual Orientation or Gender Identity*), and a claim by the Department of Education that Title IX prohibited discrimination based on sexual orientation and gender identity. *See* 86 Fed. Reg. 32,637 (June 22, 2021).

President Trump revoked Executive Order 14012 with Exec. Order No. 14,168, 90 Fed. Reg. 8615 (Jan. 20, 2025), *Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*.[1] Moreover, the Defendants' cited Department of Education regulation has been vacated and/or enjoined in two courts, and specifically enjoined from enforcement in Missouri.[2]

---

[1] That order says, "ideologues who deny the biological reality of sex have increasingly used legal and other socially coercive means" against government employees, and ordered the Attorney General to issue guidance "to ensure the freedom to express the binary nature of sex … in workplaces and federally funded entities."

[2] *See* https://www.ed.gov/sites/ed/files/about/offices/list/ocr/docs/202106-titleix-noi.pdf (citing *State of Texas* v. *Cardona*, No. 4:23-cv-604 (N.D. Tex.) (June 11, 2024); *State of Tenn., et al.* v. *U.S. Dep't of Educ.*, No. 3:21-cv-308 (E.D. Tenn.) (July 15, 2022)).

These courts said the First Amendment protected teachers against speech codes like the one Hickman Mills tried to impose on Bachman. So the law did not require this policy; policies like this have been held to violate the law.

Bachman showed that the policy was discriminatory. The rules for teachers turned entirely on each student's subjective feelings, with no bounds on the mandated terminology. App. 16; R. Doc. 1, at 9, ¶ 69. Thus, the policy is easier to explain as a pretext, a tool to find and exclude teachers that might reject gender-identity ideology. App. 9; R. Doc. 1, at 2, ¶ 4.

Moreover, Defendants had other ways to achieve their goals. But the District refused to even consider what alternatives might be available. Bachman suggested several less restrictive methods, such as permitting neutral terms or reassigning classes, which would have satisfied all the claimed interests without forcing Bachman to violate her convictions. App. 24; R. Doc. 1, at 17, ¶ 145; App. 26; R. Doc. 1, at 19, ¶ 161.

**V.    The lower court dismissed Bachman's claims, and she timely appealed.**

After her termination in July 2022, Bachman timely filed an E.E.O.C. religious discrimination complaint and received a right-to-sue letter. App. 22; R. Doc. 1, at 15, ¶ 116.

She then filed suit in the Western District of Missouri. App. 8, *et seq.*; R. Doc. 1, at 1, *et seq* She asserted ten ways that her termination violated her rights under the First Amendment, Title VII, and state laws protecting religious freedom. She said the District had required unlawful compelled speech, denied her a reasonable religious accommodation, and retaliated against her.

But the district court dismissed all these claims on a 12(b)(6) motion, in an order on March 29, 2024. App. 112, *et seq.*; R. Doc. 40, at 1, *et seq.* The district court said Bachman's speech about the student was an official duty, even if set by the student. App. 120; R. Doc. 40, at 9. And it said the policy was neutral and generally applicable, unless "the policy was specifically targeted at a particular religion or religious practice" or "the District permitted teachers of different religious beliefs to violate the policy." App. 123-4; R. Doc. 40, at 12-13. Therefore, it held Bachman's complaint failed to state any claims and dismissed with prejudice to refiling. App. 132; R. Doc. 40, at 21.

Bachman appeals. A policy that imposes student-created speech codes on a religious public-school teacher, but not the administration or other teachers, violates multiple laws.

## Summary of the Argument

Teachers do not shed their First Amendment freedoms "at the schoolhouse gate." *Tinker* v. *Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). Here, the Hickman Mills School District put Geri Bachman to a choice: speak consistent with a student's gender identity claim or be fired. The District terminated Bachman when she declined to refer to her female students as boys yet allowed others to identifying the students by a female identity.

The directive violates the law in multiple ways. This brief groups those violations into four categories: Constitutional free exercise of religion protections, Constitutional free speech protections, Federal statutory protections, and state law protections.

First, the District's policy violates the Free Exercise Clause because it treats similar conduct differently. For example, it prohibits one teacher from conduct allowed to others. For another, allows other faculty to stay silent, even as it tried to force the teacher with religious scruples to say things she believes to be untrue. And even more, it does not bind administrators. The policy is not neutral or generally applicable.

Under *Fulton* v. *City of Philadelphia*, 593 U.S. 522 (2021), a policy that is not neutral and generally applicable triggers strict scrutiny. Bachman alleges the policy was not neutral or generally applicable in at least four ways:

- The policy excludes non-teachers, which leaves the District's administrators free to act and speak.

- The District targeted her religiously motivated speech for punishment while letting others engage in the same speech without punishment.

- The District targeted her religiously motivated silence for punishment while letting others stay silent about gender identity aspects.

- The policy depends on individualized assessments; each student can demand different speech from each teacher or exempt them, and so the District's punishment decision is individualized as well.

Under *Church of the Lukumi Babalu Aye, Inc.* v. *City of Hialeah*, 508 U.S. 520 (1993) and *Masterpiece Cakeshop* v. *Colorado C.R. Comm'n*, 584 U.S. 617 (2018), these departures from neutrality and general applicability demand strict scrutiny. Yet the District has offered no compelling justification that is narrowly tailored to override Bachman's religious convictions.

Second, the District compels speech, violating the First Amendment. Government cannot force teachers to adopt an ideological message as their own

belief, especially when that message is not required by curriculum or uniformly imposed. The District's pronoun mandate wasn't a directive about the content to be presented in class. Rather, it forced her to personally apply ideas about sex and gender to her students both inside and outside class. The District tried to compel Bachman to endorse a student's claimed identity – to say that specific female children were really males – even though it allowed other teachers to address the students as females. Bachman tried to stay silent on the issue in the classroom, as others were allowed to do.  But the District would not let her. That violates the core principle of *Janus* v. *AFSCME*, 585 U.S. 878 (2018): the government may not force citizens – or employees – to mouth personal affirmations of ideas they reject.

Third, the District violated Title VII. Under *Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015), Title VII requires employers to accommodate religious practice unless it imposes undue hardship. She requested accommodation, but the District said religious accommodations were impossible and fired her. It offered no evidence that her accommodation would create an undue hardship, as *Groff* v. *DeJoy*, 600 U.S. 447 (2023) requires.  And because she was qualified to teach, the District cannot dismiss her for failing to meet the minimum qualifications for her position. Moreover, after she pointed out that the policy singled her out unfairly, the District

escalated her reprimand to termination. That states a retaliation claim under *Crawford* v. *Metro. Gov't of Nashville and Davidson Cty.*, 555 U.S. 271, 276 (2009).

Fourth, the district court wrongly dismissed Bachman's state-law claims. Missouri's Constitution robustly protects religious conscience. Additionally, the Missouri Religious Freedom Restoration Act and Student Religious Liberties Act prohibit public schools from discriminating against anyone for their religious beliefs. The District's policy punished Bachman's faith while letting others speak freely. The lower court also erred by dismissing her claims with prejudice, without allowing her to amend or refile. If there were legitimate pleading issues, she could have cured them by identifying comparators or clarifying allegations.

Taken together, the district court erred several ways. It misapplied the tests for neutrality and general applicability. And it wrongly equated being qualified for a job with meeting every employer demand. Then it presumed to resolve factual disputes that should have gone to discovery. On a proper reading, Bachman plausibly alleged that her rights were violated. So her claims should not have been dismissed at the pleading stage.

At bottom, this case asks a simple question: can a public school force a teacher to speak words that violate her faith, while letting others say what they wish, and then fire her alone for her silence? The First Amendment, especially, says no.

## I. Bachman states a Free Exercise claim; the District's policy is not "neutral or generally applicable."

### A. The standard of review is *de novo*.

This Court reviews the grant of a motion to dismiss under Rule 12(b)(6) under a *de novo* standard. *Carton* v. *General Motor Acceptance Corp.*, 611 F. 3d 451, 454 (8th Cir. 2010). In conducting this review, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in Bachman's favor. *Braden* v. *Wal-Mart Stores, Inc.*, 588 F. 3d 585, 594 (8th Cir. 2009).

Dismissal is appropriate only where the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard does not require probability; it asks whether the complaint contains "more than a sheer possibility" the law was violated. *Id.* So an entire complaint should be dismissed only when "it appears beyond doubt" that plaintiff can show "no set of facts" entitling her to relief. *Knapp* v. *Hanson*, 183 F. 3d 786, 788 (8th Cir. 1999).

### B. Punishing a religious teacher for her "gender identity" silence or statements, while exempting colleagues, states a Free Exercise claim.

At the highest level of law, the First Amendment's Free Exercise Clause, applicable to the States *via* the Fourteenth Amendment, provides that "Congress

shall make no law ... prohibiting the free exercise" of religion. U.S. CONST. AMEND. I; *Fulton* v. *City of Philadelphia, Pennsylvania*, 593 U.S. 522, 532 (2021).

A plaintiff can plead free exercise violations "in various ways," including by showing that a government entity has burdened her sincere religious practice "pursuant to a policy that is not 'neutral' or 'generally applicable.'" *Kennedy* v. *Bremerton Sch. Dist.*, 597 U.S. 507, 525 (2022). This standard was met when Bachman pleaded that her conduct in this matter was motivated by sincere religious beliefs, *see* Statement of the Case § I, *supra* (concerning religious beliefs) and that her conduct was prohibited and punished as a result of the District's individualized demands. She also says the policy excluded administrators for no good reason, that enforcement of the policy was inconsistent, and that it targeted against her as a person seeking religious accommodation. *See* Statement of the Case § II and § IV, *supra*.

But the lower court dismissed all of Bachman's religious discrimination claims (under the First Amendment, Title VII, and state law) by declaring Hickman Mills' directive "neutral and generally applicable." To plead a claim, the court said Bachman would have to allege the policy "was specifically targeted at a particular religion or religious practice," or that it "permitted teachers of different religious beliefs to violate the policy." App. 123-4; R. Doc. 40, at 12.

The lower court seems to have misapplied the tests for "neutrality" and "general applicability." Its results contradicted the Supreme Court's Free Exercise precedents. Because Bachman pleaded at least three ways the policy states a Free Exercise claim, and should be subjected to strict scrutiny:

- The policy facially exempts non-teachers, and so it is not generally applicable.

- The policy was not enforced neutrally; other teachers engaged in similar speech (or silence), but administrators only said Mrs. Bachman "violated" their directive.

- The policy hinged on how the District assessed each teacher's response to each student's personal speech code.

      1.     The Supreme Court has recognized multiple ways to show a rule is not "neutral and generally applicable."

A plaintiff can show a policy is not neutral or generally applicable in several ways.[3] This includes "subtle departures from neutrality," "covert suppression of

---

[3] As Justice Goldberg observed in *Abington* v. *Schempp*, the First Amendment's structure provides "no simple and clear measure" to "invariably demark" Free Exercise claims. 374 U.S. 203, 306 (1963)(Goldberg, J., concurring). *Accord*

particular religious beliefs," or "distinctive treatment" of religious conduct. *Church of Lukumi Babalu Aye, Inc.* v. *City of Hialeah.*, 508 U.S. 520, 534 (1993). While this includes facial targeting, and discrimination between two religious groups, a law can subtly depart from neutrality in other ways. And in *Lukumi*, the Supreme Court relied on this kind of evidence to strike down an ordinance that was facially neutral but enacted with an intention to discriminate against religious practitioners. *Id*.

Second, a facially neutral rule violates the First Amendment if decisionmakers do not punish similar conduct the same. *Masterpiece Cakeshop* v. *Colorado C.R. Comm'n*, 584 U.S. 617, 636 (2018). That is especially true when religious believers are punished for conduct the government conducts itself. "[A] prohibition that society is prepared to impose upon [the religious] but not upon itself" violates the First Amendment. *Lukumi*, 508 U.S. 520 at 545.

Third, a system where government assesses individual cases is not "neutral and generally applicable." *Fulton* v. *City of Philadelphia, Pennsylvania*, 593 U.S. 522,

---

*Hosanna-Tabor Evangelical Lutheran Church & Sch.* v. *E.E.O.C.*, 565 U.S. 171, 190 (2012)(no rigid definitions in the Free Exercise sub-field of "ministerial exception.")

533 (2021). If some individuals are exempted from the general rule, the government "may not refuse to extend that system to cases of 'religious hardship' without compelling reason." *Id*. at 534.

As discussed below, Bachman's pleaded included facts that met all of these tests for a Free Exercise claim.

### 2. Bachman pleaded that the policy targets, departs from neutrality, and treats religious conduct distinctively.

First, the policy is not even facially neutral; it applied to "teachers," while leaving administrators free to act based on the student's birth sex. This allowed District officials to avoid grappling with the student's demands while forcing Bachman to do so. A policy that grants exemptions to some secular actors - but says religious accommodations cannot be considered - is not neutral. *Lukumi*, 508 U.S. 520 at 545.

Moreover, Bachman did plead that the policy was targeted at her religion, was not neutral, and treated her religious conduct distinctively. Contrary to the lower court's opinion, she specifically claimed targeting of her religious view. Just a sampling:

- "the Defendants' 'choice'-based policy was a pretext for discrimination; the policy targeted teachers with disfavored views." App. 9; R. Doc. 1, at 2, ¶ 4.

- "Bachman believes the students knew she was a Christian and were targeting her intentionally…" App. 21; R. Doc. 1, at 14, ¶ 105.

- "Defendants' interpretation, policies and practices intentionally targeted Plaintiff and inhibited Plaintiff's speech." App. 27; R. Doc. 1, at 20, ¶ 170.

- "Such targeting by Defendants of Plaintiff's speech is an unconstitutional burden and violation of Plaintiff's constitutional rights, including … Free Exercise of Religion …" App. 28; R. Doc. 1, at 21, ¶ 177.

This, combined with Bachman's evidence that the same conduct was allowed to others (*see* Statement of Case, § III and § IV, *supra*) plausibly shows "subtle departures from neutrality," and "distinctive treatment" of religious conduct, as prohibited in *Lukumi*, 508 U.S. at 534.

3.　　Bachman pleaded that her conduct was punished more harshly in the religious accommodation context than similar conduct justified under secular rules.

Second, Bachman also showed that decisionmakers were not neutral in their application of the policy. Administrators punished her religious accommodation request harshly but allowed themselves and others to treat the students as females. *See* Statement of Case § III and § IV, *supra*. This meets the test in *Masterpiece Cakeshop* v. *Colorado C.R. Comm'n*, 584 U.S. 617 (2018). There, the Supreme Court said that when government enforces a policy in a targeted and disparate manner, punishing some with religious views and not others with different views, it violates the Free Exercise clause. *Id*. at 636.

The lower court acknowledged that other staff were allowed to say what Bachman wanted to say but erroneously said she would only have a claim if she pleads the District permitted teachers with *other* faiths to "violate the policy." App. 123-4; R. Doc. 40, at 12-13.

But Supreme Court precedent shows that discrimination is often revealed by this kind of inconsistency. Mrs. Bachman might, with broad discovery, be able to determine whether any other teachers were atheists or Methodists. But at the pleading stage, she pleads that the District claims to have *no room for religious accommodation*, even while it allowed some staff to use the same words. The lower

court's decision is akin to demanding that Mr. Sherbert allege the religious identities of all the other applicants for unemployment in South Carolina. But this is not a necessary element of a Free Exercise claim. *See Sherbert* v. *Verner*, 374 U.S. 398, 401 (1963). Discrimination is often revealed when a decisionmaker says religiously motivated conduct violates some rule, but similar conduct by others does not.

*Masterpiece* exemplifies this kind of discrimination. In *Masterpiece,* cake artist Jack Phillips was punished by the Colorado Human Rights Commission for refusing to make custom designed wedding cakes for same sex weddings, due to Phillips' religious beliefs. Phillips pointed out that other bakers had not been punished for similar conduct – but they had refused to decorate custom cakes with messages *opposed* to same sex weddings. *Masterpiece*, 584 U.S. at 637-8. Colorado always decided for bakers – except for Phillips. *Id*. Colorado claimed this was because only Phillips had violated the law, while the other bakers who affirmed same sex marriage were properly offended by customer requests to denigrate it. The Supreme Court rejected Colorado's explanation: "the Commission's consideration of Phillips' religious objection did not accord with its treatment of these other objections." *Id*. at 637. Colorado had violated the First Amendment. *Id*. at 638.

The decisionmakers in *Sherbert* also discriminated by treating religious requests distinctively from others. The District's claim that only Bachman was

"insubordinate," is akin to the South Carolina Employment Security Commission's claim that Adell Sherbert had "failed, without good cause … to accept available suitable work." *Sherbert* v. *Verner*, 374 U.S. 398, 401 (1963). If other rationales were accepted as "good cause," the decision to decline Sherbert's unemployment had to meet strict scrutiny. In this case, if others are allowed to refer to particular students as "girls," the discrimination cannot be hidden with some rule that labels only the religious person's request as "without good cause."

So, saying that only Bachman 'violated' a policy does not signal *neutrality*; it signals *discrimination* that similar conduct never manages to violate a policy.

A key sign of discrimination here is the District's argument that it can grant no religious exemptions, as a matter of law. *See* App. 126; R. Doc. 40, at 15. Under Title VII, the employer has the affirmative duty to accommodate religious practices, so its burden is to seek out reasonable accommodations. *See* 42 U.S.C. § 2000e(j); *E.E.O.C.* v. *Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775 (2015). But here, the District finds no room to balance anything. If a religious request were granted, "the District would violate the non-discrimination laws." App. 54; R. Doc. 11, at 16.[4]

---

[4] *But see United States* v. *Skrmetti*, 145 S. Ct. 1816, 1834 (2025) ("We have not yet considered whether *Bostock's* reasoning reaches beyond the Title VII context").

But everyone seems to agree that - outside the religious accommodation context - Hickman Mills staff *did* treat a student as a girl in some classes and in school records. And they did that after the student's request to Bachman. If it is impossible to grant a religious accommodation to do something, but others could do that thing under a secular loophole, that is the kind of discrimination prohibited in *Lukumi* and *Sherbert*.

The District says there is no way to allow religious people to seek accommodation to this policy. App. 54; R. Doc. 11, at 16. Then it must answer, under strict scrutiny, how administrators and other faculty were allowed to do it.

> 4.   Bachman pleaded a policy that depended on individualized assessment and application.

As demonstrated above, the policy was not facially neutral or generally applicable (IB1), and decisionmakers about the policy did not make neutral and generally applicable decisions (IB2).

A third reason for the policy to receive strict scrutiny is that it provides "a mechanism for individualized exemptions," and so it is not generally applicable. *Fulton* v. *City of Philadelphia, Pennsylvania*, 593 U.S. 522, 533 (2021).

Defendants' policy for "teachers" has an automatic exemption: non-teachers and administrators. It is the administrators who make class assignments and control

official records. *See supra*, at 9, discussing administrators' authority. As applied, administrators like Principal Jordan faced no demands, so the policy is not neutral or generally applicable.

The District also claims it consistently punishes teachers that violate the student's speech code. But it does engage in individualized assessment. The District does not demand that *all* teachers use a student's desired pronouns; if that were the case, the District would impose equal burdens on all employees after one notice. Rather, the District individual assesses (1) the student's individualized speech-code demand, (2) whether the demand applied to teachers subject to the policy, and (3) whether a teacher has adequately complied with the student's demands.

If the student makes no demand, the District does not act. If the student tells Principal Jordan of her demand about Girls P.E., Mr. Jordan only gives instructions to one teacher, not the larger number of staff with authority over records and class assignments. Teachers can treat students consistent with their birth sex unless the District determines the individual teacher has received a student demand.

Ms. Bachman's complaint at least raises an inference that a student's speech code was forced on her because *the student knew Bachman was religious.* Recall that one student made two, related complaints to Principal Jordan: Bachman refused to use the male identity and Bachman had made a religious reference in class. App. 18;

R. Doc. 1, at 11, ¶ 82-83. So the student knew Bachman was religious. The student allowed others to use her female identity. The student was *not* fine with a religious teacher using the female identity. The fact that made the difference appears to be Bachman's faith.

Defendants say they are not responsible "vicariously" for a student's improper motive. App. 104, R. Doc. 11, at 11. But that is beside the point. Strict scrutiny makes sure that religious exercise is only burdened by compelling, governmental interests. Here, there is evidence that a student's improper, personal, discriminatory motive cause the government to fire Bachman. Giving students a "heckler's veto" against religious teachers is private discrimination, not a compelling government interest. A "listeners' reaction to speech" is not a neutral basis for regulation. *See Forsyth Cty.* v. *Nationalist Movement*, 505 U.S. 123, 134 (1992).

### C. The lower court applied rational basis review, and the Defendants have not shown the policy meets strict scrutiny.

As shown above, Bachman has stated claims for relief under the Free Exercise clause. She has shown "subtle departures from neutrality," "covert suppression of particular religious beliefs," or "distinctive treatment" of religious conduct prohibited in *Lukumi*, 508 U.S. at 534 (1993). And she has shown inconsistent

government decision-making disfavoring religious accommodations, prohibited in *Masterpiece*, 584 U.S. 617 (2018). And she has shown the directive required individual assessments, stating a claim under *Fulton*, 593 U.S. 522 (2021).

The lower court erred by assessing the policies under rational basis, *see* App. 121; R. Doc. 40 at 10, and dismissing Bachman's claims under the U.S. Constitution (Counts 3 & 10) and the Missouri Constitution (Count 9). App. 124; R. Doc. 40, at 13.

These claims should be reinstated.

## II.    Bachman states a free speech claim; the District cannot compel a teacher to express agreement with a student's discretionary message.

### A.    The standard of review is *de novo*.

Orders dismissing Free Speech claims under Fed.R.Civ.P. 12(b)(6) are reviewed *de novo*. *See* Pt. I(A), *supra*, and cases cited therein.

### B.    The First Amendment protects teachers against government speech rules that prohibit speech outside school, between parents and teachers.

Bachman alleges that she asked to talk to parents about their student's preferences but was told that she could not. App. 21; R. Doc. 1, at 14, ¶ 102.

A similar policy against speaking to parents outside of school was enjoined by the District of Kansas on Free Exercise grounds. *Ricard* v. *USD 475 Geary Cnty., KS Sch. Bd.*, No. 5:22-CV-04015-HLT-GEB, 2022 WL 1471372, at *6 (D. Kan. May 9,

2022). It did not reach the in-school portion of the policy, because that district granted Ricard an accommodation – an in-school right to address students without gendered pronouns. 5

The lower court overlooked this aspect of the policy, which is an independent ground for reversal.

### C. The First Amendment prohibits public schools from requiring teachers to adopt beliefs they do not hold or to say untrue things.

The First Amendment protects both the right to speak and the right not to speak. Government officials may not prescribe what is orthodox or compel citizens to support beliefs they reject. *Barnette*, 319 U.S. at 642; *Wooley* v. *Maynard*, 430 U.S. 705, 715 (1977). "Forcing free and independent individuals to endorse ideas they find objectionable is always demeaning," and "the First Amendment tolerates none of that." *303 Creative LLC*, 600 U.S. 570, 590 (2023).

---

5 Appellant notes that Geary County was represented at hearing by the same firm now representing Hickman Mills. The policy at issue there was "[s]tudents will be called by their preferred name and pronouns." That Geary County's lawyers allowed it to permit exceptions for (1) occasional misgendering and (2) allowing teachers to forego gendered pronouns for all students, strongly undercuts Hickman's arguments here that any religious accommodation violates the law or is an 'undue burden' as a matter of law.

This rule applies even when the target is a government employee. "[P]ublic employees do not surrender all their First Amendment rights by reason of their employment." *Garcetti* v. *Ceballos*, 547 U.S. 410, 417 (2006). And when the government forces speech—rather than merely restricts it—the constitutional injury is even greater. "Compelling individuals to mouth support for views they find objectionable violates that cardinal constitutional command." *Janus* v. *AFSCME*, 585 U.S. 878, 896-97 (2018).

Government's ability to force a teacher to speak remains limited, even in the workplace. Teachers do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker* v. *Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). The right against compelled speech extends to them too.

Thus, a government school cannot force anyone to "utter what is not in [her] mind about a question of political and religious significance." *303 Creative LLC* v. *Elenis*, 600 U.S. 570, 596 (2023), *quoting West Virginia State Bd. of Educ.* v. *Barnette*, 319 U.S. 624, 634(1943). A school board cannot force teachers and students to salute the flag and recite the pledge of allegiance. *Barnette*, *id*.

Government can, naturally require employees to serve as "spokesperson," and deliver the government's lawful messages. *Janus* v. *AFSCME,* 585 U.S. 878, 910 (2018). And it may ask employes to serve as a draftsman in memos, *Garcetti* v.

*Ceballos*, 547 U.S. 410 (2006), or as an internal reporter. *See Janus*, 585 U.S. at 878 (internal grievance memo in *Connick* v. *Myers*, 461 U.S. 138 (1983) mostly raised private, not public, concerns).

But even in creating and delivering official messages, government may not force employees to make false statements about their own views or endorse messages they believe are false. It cannot require teachers to state a loyalty oath or disclaim their personal political beliefs. *Wieman* v. *Updegraff*, 344 U.S. 183 (1952). It cannot force employees to create memos of false praise for their superiors. *Janus*, 585 U.S. at 878. It cannot force employees to alter their testimony, to say something untrue. *Jackler* v. *Byrne*, 658 F. 3d 225, 242 (2d Cir. 2011)(officer's testimony as employee had civilian analogue). Consistently, a teacher's expression about their private views receives First Amendment protection. *Givhan* v. *Western Line Consol. School Dist.*, 439 U.S. 410, 414 (1979).

Here, students are asking for personal views, not the government's message. The student does not ask 'what does the government say I am,' or even 'what does the curriculum say I am,' but 'what do *you* say I am?' These brief discussions are analogous to conversations between two citizens, not a student request for the government's official view. Like the Coach in *Kennedy*, Mrs. Bachman's actual duties still leave time for a "private moment[]" to call home, check messages,

socialize, or engage briefly in personal speech and activity with students and others. *See Kennedy* v. *Bremerton Sch. Dist.*, 597 U.S. 507, 531 (2022). The student wanted Bachman to agree, falsely, with the student's claim, and the District ordered her to. The First Amendment protects *both* citizens in their "interchange of ideas for the bringing about of political and social changes desired by the people." *Roth* v. *United States*, 354 U.S. 476, 484 (1957).

Courts are increasingly recognizing that gender identity demands force teachers to signal their agreement with a student's political and social ideology. Thus, a Kentucky federal court concluded that a U.S. Department of Education rule requiring that teachers use preferred names and pronouns was compelled speech. *Tennessee* v. *Cardona*, 737 F. Supp. 3d 510, 545 (E.D. Ky. 2024), *appeal dismissed sub nom. Tennessee* v. *McMahon*, No. 24-5588, 2025 WL 848197 (6th Cir. Mar. 18, 2025). The court observed: "it is unclear how the Government's articulated position can be seen as anything less than a tacit endorsement of a content-based heckler's veto." *Id.*, 737 F. Supp. 3d at 545.

Bachman wanted to stay silent on gender identity. *Janus* says gender identity is a "sensitive political topic[]" and undoubtedly a matter of "profound value and concern to the public." 585 U.S. at 913-14. And so, under *Janus*, the state may not compel employees to say what they do not believe.

**D.    The student-imposed speech code required Bachman's personal statement of agreement; it did not arise from the "official duties" of a Girls' Physical Education teacher.**

Bachman alleges that Hickman Mills compelled her to say the student's demanded name and gender identity. It required more than delivering the government message, it required an "affirmation of a belief and an attitude of mind," prohibited by the First Amendment. *Barnette*, at 633. Mrs. Bachman believed the student was a girl; the student demanded Bachman speak of her as a boy. Participating in the students' 'social transition' claims are not part of Bachman's job duties.

The Supreme Court has explained how to recognize "official duty" speech: "When an employee engages in speech that is part of the employee's job duties, the employee's words are really the words of the employer. The employee is effectively the employer's spokesperson." *Janus*, 585 U.S. at 910. The Supreme Court reiterated this in *Kennedy* v. *Bremerton Sch. Dist.,* 597 U.S. 507, 527 (2022): While they are private citizens, teachers "are also government employees paid in part to speak on the government's behalf and convey its intended messages."

But the district court concluded that Bachman's speech was unprotected because it occurred "pursuant to her official duties." It accepted, without scrutiny, the District's broad claim that "how a teacher communicates with students" always

falls within those duties. App. 120; R. Doc. 40, at 9. But that sweeping assertion conflicts with *Janus*, 585 U.S. at 910, which makes clear that speech within one's job duties consists of being a spokesperson for "words of the employer." There was no official or curricular duty for Bachman to agree with student's beliefs about the application of gender identity to the student.

Beyond doubt, Hickman Mills was not asking Bachman to convey "words of the employer." As explained above, Bachman had *asked* to address the student with the "District's message" as contained in school records, which was the student's female identity. If all classroom names are really just government speech, then the teacher could tell a student they will not contradict the Government's official name. *See Janus*, 585 U.S. at 910. But the policy here was to *hide* the government's official position if it conflicted with the student's personal beliefs. The directive had some other impetus than the District's official message.

At a minimum, the court failed to conduct the "practical" inquiry required by *Garcetti* v. *Ceballos*, 547 U.S. 410, 424 (2006) (inquiry must go to actual expectations, not formal job title).

*Geraghty* v. *Jackson Loc. Sch. Dist. Bd. of Educ.*, No. 5:22-CV-02237, 2024 WL 3758499, at *11 (N.D. Ohio Aug. 12, 2024) did conduct the practical analysis and is particularly on point. That court first observed that *Garcetti* applies to an employee

who has spoken, not an employee who asks to remain silent. *Id.* at *11. But even if *Garcetti* did apply, speaking consistent with a student's personal beliefs is not an official duty of an English teacher. "[T]he question is not whether using preferred names and pronouns was part of [the teacher's] ordinary job duties, but whether it was part of her ordinary job duties to convey (or refuse to convey) the message that those names and pronouns carried." *Id.* at * 13. Speaking consistent with the student's gender identity was not a ministerial task or a ritual greeting. "Such a sanitized view of language ignores the reality that "titles and pronouns carry a message" – something acknowledged by the students demanding this speech. *Id.* at *12. Because the speech was not curricular, or required by the normal duties of a teacher, it was protected speech. *Id.* at *13. The contents of the Girls' Physical Education" curriculum at Hickman is not yet developed in the record. But assuming it could require Bachman to teach about sex, or even about the topic of gender dysphoria, it cannot require a teacher to give her false opinion about those topics. Teaching about a topic might be an official duty. Telling a girl she is a boy, as Geraghty correctly decided, is not.

At the pleading stage, the Court must credit Bachman's well-pleaded allegations—not defer to the District's unsupported and overbroad assertions about the nature of teaching.

The lower court primarily relied on two decisions to support its decision about "official duties." *Kluge* v. *Brownsburg Comm. Sch. Corp.*, 432 F. Supp. 3d 823, 837 (S.D. Ind. 2020)("*Kluge I*"), and *Willey* v. *Sweetwater County Sch. Dist.*, No. 23CV-0069-SWS, 2023 WL 9597101 (D.Wyo. Dec. 18, 2023). These cases do not fit the facts here.

*Kluge* has since been vacated by the 7th Circuit and re-decided on remand at 732 F. Supp. 3d 943, 945 (S.D. Ind. 2024)("*Kluge II*"). An appeal was argued in January, and has not been decided, *see* No. 24-1942 (7th Cir. 2024)(May 31, 2024).

All the *Kluge* opinions concern summary judgment, not on motion to dismiss on 12(b)(6), which makes reliance here improper.

But the policy in *Kluge I* and *II* was radically different than Hickman's shockingly wooden "directive" here. Brownsburg Schools' policy was to address each student "by *the* name that appears in PowerSchool, a database[.]" *Kluge* v. *Brownsburg Cmty. Sch. Corp.*, 732 F. Supp. 3d 943, 948 (S.D. Ind. 2024) (emph. added). In this situation, Mrs. Bachman wanted to refer to a student by the name in Hickman Mills' database. Mrs. Bachman would not have violated Brownsburg's policy in this situation.

Further, Brownsburg administrators decided on "the" one name for each student and required "all staff" – teachers and administrators – to use it. *Id*. Students

could only change their first names in PowerSchool if they showed a "need" for the change, using letters from a parent and a healthcare professional. *Id.* Hickman's policy has no way to assess whether a student's request is motivated by health concerns, or animus to religious teachers. And Hickman's policy allows individualized determinations about each teacher's rules, contrary to Brownsburg's policy that set one, school-decided name for all staff.

*Willey* v. *Sweetwater County Sch. Dist.*, No. 23CV-0069-SWS, 2023 WL 9597101 (D.Wyo. Dec. 18, 2023), adopted *Kluge I*'s reasoning, but still found the Teacher *did state a claim for Free Exercise.* Addressing the Teacher's Free Speech claim, the court found that Sweetwater had set a policy that "applied to all faculty," and did not conceal information from parents, *contra* Hickman's policy here. *Id.* at *7. *Willey's* discussion seems to assume, consistent with *Kluge I* and *Kluge II*, that the student has adopted one, consistent new name: "calling students *a* preferred name, including *one* that does not align with a student's biological sex," was an official duty in the classroom. *Id.* at *8. Here, Mrs. Bachman objects to carrying a student's message, not a government message.

*Willey* is less persuasive than *Geraghty* v. *Jackson,* 2024 WL 3758499, at *11, on the issue of official duties. But *Willey* allowed a First Amendment free exercise claim to proceed, because the policy was not generally applicable – meaning

Sweetwater's policy (and accommodations) would be subject to First Amendment strict scrutiny. *Id*. at *8.

Mrs. Bachman's claim deserves the same relief.

**III. Bachman states Title VII claims; the District discriminated against Bachman and retaliated for her complaints about its discriminatory policy.**

    **A. The standard of review is *de novo*; pleadings here must contain plausible support but not necessarily state each element of a prima facie case.**

The standard of review for this issue remains *de novo*, accepting as true all factual allegations in the light most favorable to the nonmoving party. *See* Pt. I(A), *supra*. However, "at the pleading stage in the discrimination context, it is unnecessary to plead enough facts to establish a prima facie case." *Ingram* v. *Arkansas Dep't of Correction*, 91 F. 4th 924, 927 (8th Cir. 2024).

    **B. Bachman states a Title VII disparate treatment claim.**

The lower court dismissed Bachman's Title VII religious discrimination claim because it found "that plaintiff has failed to plausibly allege a prima face [*sic*] case of religious discrimination." App. 126; R. Doc. 40, at 15. This was error, as it is unnecessary to plead a prima facie case at this stage. *See Ingram*, 91 F. 4th at 927.

Title VII makes it unlawful for an employer to "refuse to hire or to discharge any individual or otherwise discriminate…because of such individual's …religion." 42 U.S.C. § 2000e-2(a). "Because of" prohibits making a protected characteristic

even a "motivating factor" in a termination. *See E.E.O.C.* v. *Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015). Title VII demands more than neutrality toward religious practices – it affirmatively obliges employers to give them favored treatment. *See id.* at 775.

A plaintiff may present "direct evidence of discrimination, that is, evidence showing a specific link between the alleged discriminatory *animus* and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *McGinnis* v. *Union Pac. R.R.*, 496 F. 3d 868, 873 (8th Cir. 2007). Alternatively, if the plaintiff lacks direct evidence, the plaintiff may survive a motion for summary judgment by creating an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973). *McGinnis* v. *Union Pac. R.R.*, 496 F. 3d 868, 873 (8th Cir. 2007).

> 1.     Bachman was qualified to teach and hired by Hickman Mills, so the lower court incorrectly applied the "legitimate expectations" analysis.

*McDonnell Douglas*'s second prong has been framed in various language – whether the employee was "qualified" for the position, *Beasley* v. *Warren Unilube, Inc.*, 933 F. 3d 932, 937 (8th Cir. 2019), or "met her employer's legitimate expectations," *Gibson* v. *Am. Greetings Corp.*, 670 F. 3d 844, 853 (8th Cir. 2012).

The district court's dismissal of Bachman's Title VII claim hinged on the second *McDonnell Douglas* prong. It held that Bachman "failed to meet the District's legitimate expectations," because she refused to follow the challenged policy she says was unlawful. App. 126; R. Doc. 40, at 15.

But this sets the bar far too high. The test is merely intended to weed out the most common alternative, nondiscriminatory reasons for the termination, *Texas Dep't of Cmty. Affs.* v. *Burdine*, 450 U.S. 248, 254 (1981), not to require Bachman to prove the ultimate issue of this policy's discrimination in her pleading.

This Court has referred to the second prong as "the minimal qualification standard." *McGinnis* v. *Union Pac. R.R.*, 496 F. 3d 868, 874 at n. 2 (8th Cir. 2007). This standard says a "plaintiff must show only that he possesses the basic skills necessary for performance of the job, not that he was doing it satisfactorily." *Id.* (citing *Slattery* v. *Swiss Reinsurance Am. Corp.*, 248 F. 3d 87, 92 (2d Cir.2001)). "This burden is "not onerous." *Rodgers* v. *U.S. Bank, N.A.*, 417 F. 3d 845, 852 (8th Cir. 2005) (cautioning against requiring proof of the ultimate issue), *abrogated on other grounds by Torgerson* v. *City of Rochester*, 643 F. 3d 1031 (8th Cir. 2011). Nor are these requirements "intended to be rigid, mechanized, or ritualistic." *Id.*

*Slattery*, 248 F. 3d at 92, noted that at various times, courts have stated the second prong with different terminology. But variations in terminology between

"qualified for the position" and "performing ... satisfactorily" cannot raise the standard higher than the Supreme Court's minimal qualification standard. *See Texas Dep't of Cmty. Affairs* v. *Burdine*, 450 U.S. 248, 254 (1981). This Court adopted *Slattery's* reasoning and conclusion: "[W]here discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw." *McGinnis* v. *Union Pac. R.R.*, 496 F. 3d 868, 874 (8th Cir. 2007).

Bachman was hired, so the required inference can be drawn that she met the minimum qualifications to teach. App. 10; R. Doc. 1, at 3, ¶¶ 21-2. And there is no hint that Bachman failed to perform her duties, let alone performance problems that would have resulted in termination. Undoubtedly, Bachman was qualified to teach.[6] She is a 61-year-old with years of experience in the classroom. App. 6; R. Doc. 1, at 6, ¶ 13; App. 21; R. Doc. 1, at 14, ¶ 104. Bachman easily meets the "qualification" prong of the *McDonnell Douglas* analysis.

---

[6] While not pleaded, publicly available government records reflect that Bachman was certified and credentialed to teach Physical Education in Missouri at Hickman Mills.

*See* https://apps.dese.mo.gov/HQT/CredentialListerChecker.aspx.

2.    The lower court applied the wrong standard for "inference of discrimination."

Likewise, the lower court also said that Bachman failed to meet the fourth prong of the *McDonnell Douglas* test, "circumstances g[iving] rise to an inference of discrimination." The lower court found "plaintiff failed to allege …an inference of discrimination, as plaintiff never alleged that teachers with different religious beliefs were treated differently or were allowed to disregard the policy regarding student pronouns." App. 126; R. Doc. 40, at 15.

To the contrary, in Count V, Bachman alleges that she was discharged (and not rehired) and discriminated against due to of her religion. "Defendants punished Plaintiff and ultimately caused her contract to not be renewed because of her religious beliefs and practices." App. 29; R. Doc. 1, at 22, ¶186. She also alleges discrimination in employment conditions (demands and reprimands due to her religious conduct permitted to others, before discharge.) App. 29; R. Doc. 1, at 22, ¶ 188.

The lower court's reasoning about "inference of discrimination" was rejected by this Court in *Cole* v. *Grp. Health Plan, Inc.*, 105 F. 4th 1110, 1114 (8th Cir. 2024): A plaintiff states a claim by pleading "the failure to reasonably accommodate an employee's religious practices and singling out religious adherents for inequitable treatment." *Id.* Bachman has pleaded both.

Defendant's allegation that "plaintiff never alleged that teachers with different beliefs were treated differently" is not a ground for dismissal on the pleadings. *Id.* In *Cole*, the employer made the same claim, when it "contend[ed] that [Plaintiff] has not alleged she was treated differently from similarly situated employees who do not share her religious beliefs." *Id.* But courts do not inquire about the validity of comparators in Title VII cases until summary judgment. *Id.* (citing *Norgren* v. *Minnesota Dep't of Hum. Servs.*, 96 F. 4th 1048, 1056 (8th Cir. 2024)).

The lower court erred in demanding particular comparators; as shown above, Bachman pleaded a failure to accommodate, and that her religious request was singled out for inequitable treatment. This states a claim.

### C.    Bachman pleaded a Title VII discrimination claim based on Hickman's refusal to consider accommodation, but the lower court improperly found all accommodations would be "undue hardship" as a legal matter.

In June 2024, after the briefing below was complete, this Court held that "[a] failure to accommodate, while actionable, is not a freestanding cause of action under Title VII," *Cole* v. *Grp. Health Plan, Inc.*, 105 F. 4th 1110, 1113 (8th Cir. 2024) (citing *E.E.O.C.* v. *Abercrombie & Fitch Stores, Inc.*, 575 U.S. at 771-73 (2015)). Thus,

Bachman's separate 'failure to accommodate' count in the complaint should be considered along with her broader Title VII religious discrimination claim.

The lower court did not challenge that Bachman plausibly pleaded all the elements of a failure to accommodate claim under *Jones* v. *TEK Indus. Inc.*, 319 F. 3d 355, 359 (8th Cir. 2003). App. 126; R. Doc. 40, at 15. Instead, it concluded that *any* accommodation would impose an undue hardship as a matter of law, relying on *Kluge* v. *Brownsburg. Comm. Sch. Corp*, 432 F. Supp. 3d 823 (S.D. Ind. 2020) (*Kluge I*). App. 127-8; R. Doc. 40, at 16-7. (As explained above, *Kluge I* was vacated, redecided at 732 F. Supp. 3d 943 (S.D. Ind. 2024), and is pending appeal in the Seventh Circuit.)

The lower court's reliance on *Kluge* was error. *Kluge* was a decision on summary judgment, not a motion to dismiss, and is an out-of-circuit decision not binding on this Circuit. *See Kluge I,* 432 F. Supp. 3d at 823.

Moreover, as this Court reaffirmed just weeks ago: "[a]ny inquiry" into the reasonableness of accommodations or undue hardship "is generally not appropriately considered at the motion to dismiss stage." *Brokken* v. *Hennepin Cnty.,* No. 24-1914, 2025 WL 1585294, at *3 (8th Cir. June 5, 2025). The reasonableness of accommodations "is a question for the jury because it turns on fact-intensive issues." *Id*. Thus, *Kluge* conflicts with binding authority in this Circuit.

At this stage, the lower court improperly shifted the burden off the District. The issue is not whether Bachman proposed any acceptable accommodations. Unlike Mr. Kluge, it is not "clear" that Mrs. Bachman would only accept a "last names only" accommodation. *Kluge II,* 732 F. Supp. 3d at 967. Rather, once there is a known conflict, Title VII requires employers to act affirmatively to find and offer accommodations for religious beliefs, unless doing so would impose undue hardship. *See Groff* v. *DeJoy*, 600 U.S. 447 (2023). An employer cannot avoid liability by demanding the employee first submit an accommodation it will accept. The District has not shown that accommodation of Bachman was a legal impossibility.

Ultimately, Bachman believes even *Kluge II*'s analysis of hardship is wrong under *Groff,* 600 U.S. 447 (2023). The District cannot prove "litigation risk" is, more likely than not, an undue burden that justified firing Mrs. Bachman.

This is, in part, because the idea that Title IX requires teachers to use preferred names and pronouns has been widely refuted. Nationally, at least twenty-six states challenged the Biden administration's Title IX rule (which tried to compel gender identity speech based on Title IX, consistent with the District's claim here). "[E]very court to consider the [rule] across the nation—seven district courts and [three] courts of appeals—preliminarily enjoined enforcement of the rule." *Alabama* v. *U.S. Sec'y of Educ.*, No. 24-12444, 2024 WL 3981994, at *1 (11th Cir. Aug. 22,

2024) (becoming the third court of appeal to grant injunction). *See id*. at n. 2.
"[D]efining discrimination "on the basis of sex" [in Title IX] to include "gender identity" is contrary to law and "in excess of statutory … authority." *Id*. at *4. Title IX does not compel this policy.

If anything, quickly pushing children along the path to 'transition' is a greater risk of litigation. The Supreme Court recently upheld Tennessee's ban on drugs and surgeries trying to "treat" transgender youth. *United States* v. *Skrmetti*, 145 S. Ct. 1816 (2025). In part, this was based on "high desistance rates among youth." *Id*. at 1832. Many children who feel dysphoria in childhood later do not feel dysphoria. And some youth hastily transition and then "detransition," expressing regret. *Id*. Emerging studies show that dysphoria can often "be resolved by less invasive approaches that are likely to result in better outcomes." *Id*. at 1826.

"Perhaps the greatest piece of misinformation … is that the American standards of care in this area are strongly evidence-based," writes Helen Lewis recently in THE ATLANTIC.[7] Many youths later desist or regret transition. The

---

[7] Helen Lewis, *The Liberal Misinformation Bubble About Youth Gender Medicine,* THE ATLANTIC (June 29, 2025, 8:30 AM ET), https://www.theatlantic.com/ideas/archive/2025/06/transgender-youth-skrmetti/683350/.

District therefore cannot show that accommodating Bachman's beliefs would create more litigation than its own reflexive policy.

But this record about the reasonableness of accommodations or "undue hardship" should be developed below, through strict-scrutiny review at trial or summary judgment. This Court has said the same, in recent days. *Brokken* v. *Hennepin Cnty.,* No. 24-1914, 2025 WL 1585294, at *3 (8th Cir. June 5, 2025).

> **D.** **Bachman states a Title VII retaliation claim because she pleads her reprimand was elevated to a termination after she pointed out the policy's uneven application.**

The lower court improperly dismissed Bachman's Title VII retaliation claim.

A prima facie case of discrimination would require Bachman to show "(1) she is a member of a protected class; (2) she met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Ingram* v. *Arkansas Dep't of Correction*, 91 F. 4th 924, 927 (8th Cir. 2024). But, again, at this stage, a prima facie case need not be fully pleaded. *Id.*

The lower court dismissed because it found "plaintiff has failed to state a prima facie case of retaliation under Title VII." App. 129; R. Doc. 40, at 18. This was the wrong standard under the *Ingram* rule just stated. 91 F. 4th at 927.

Specifically, as to the substance, the lower court found that "plaintiff's opposition had nothing to do with discrimination, she simply did not agree with and refused to abide by the policy," and "simply refusing to comply with the conflicting employment requirement is not opposing an unlawful practice," App. 129; R. Doc. 40, at 18 (citing *E.E.O.C.* v. *Kroger Ltd. P'ship I*, 608 F. Supp. 3d 757, 790 (E.D. Ark. 2022)).. The lower court accepted Defendants' claim that plaintiff "did not plead that she opposed the allegedly unlawful denial of a religious accommodation… But simply requesting an accommodation does not equate to opposing an unlawful practice." App. 128; R. Doc. 40, at 17.

The lower court erred in substance by overlooking Bachman's opposition to the policy's discrimination and burden on religious exercise. "When an employee communicates to her employer a belief that the employer has engaged in ... a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." *Crawford* v. *Metro. Gov't of Nashville and Davidson Cty.*, 555 U.S. 271, 276 (2009).

Indeed, after requesting accommodation, Bachman objected that Principal Jordan had wholly ignored her rights. She knew her interests should be considered along with the interests of the District and students. She did not fault a student for sincere request motivated by gender dysphoria. There appeared to be win-win

solutions, if the District would only act on them. Bachman offered to use gender neutral last names. She pointed out that the District itself was referring to the students as girls in records and assigning the students to classes for girls. There is no evidence that other teachers were being subjected to the same reprimand. The District escalated the reprimand to termination only after she pointed out this unlawful discrimination.

Because she insisted the policy's application was unfair and failed to consider the teacher's concerns as required by law, she stated a claim for Title VII retaliation.

## IV. Bachman pleaded state-law claims religious liberty violations, and the lower court should have offered a chance to replead.

### A. The standard of review is *de novo* for claims, and abuse of discretion for dismissing with prejudice.

Orders dismissing claims under Fed.R.Civ.P. 12(b)(6) are reviewed *de novo See* Pt. I(A), *supra*, and cases cited therein. Dismissal with prejudice without leave to amend is reviewed for abuse of discretion, but any decision about 'futility' is also reviewed *de novo. In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F. 3d 1200, 1208 (8th Cir.2010).

### B. Bachman's other claims should be reinstated.

In addition to her federal law claims, Bachman pleaded several Missouri-law claims, including the Missouri Constitution's religious freedom and due process

guarantees, MO. CONST. ART. I, §§ 2, 5 & 10 (Count 9); the Missouri Religious Freedom Restoration Act, §1.302, RSMo. (Count 8); and the Missouri Student Religious Liberties Act, §160.2500, RSMo. (Count 7). The Student Religious Liberties Act says a "public school district" shall not discriminate against any person based on a religious viewpoint or religious expression. §160.2500, RSMo.

> 1. The Missouri Constitution's religious expression protections are stronger than the Federal Constitution.

The lower court dismissed Bachman's Missouri Constitution claim along with her federal free exercise claim, App. 124; R. Doc. 40, at 13, even though Missouri's Constitution more explicitly guarantees free religious expression: "no human authority can control or interfere with the rights of conscience ... nor shall a citizen's right to pray or express his or her religious beliefs be infringed." MO. CONST. ART. I, § 5. Missouri's Constitution is facially more protective than the federal First Amendment, in providing near absolute protection. As a Missouri-law creation, the District had no authority to infringe Bachman's religious expression. Dismissing this count, with prejudice, without further analysis, was in error. Bachman's Missouri Constitutional claim should be allowed to proceed.

2. Bachman's constitutional and conscience remedies are not pre-empted by the Missouri Human Rights Act, § 213.070, RSMo.

The lower court dismissed counts 7 and 8 on the grounds that they were repealed by the Missouri Human Rights Act. App. 131; R. Doc. 40, at 20. The MHRA claims to provide "the exclusive remedy for any and all claims for injury or damages arising out of an employment relationship." § 213.070, RSMo.

The claimed mechanism by which MHRA overrides Mo. RFRA, and the Student Religious Liberties Act, would be an implied repeal. Implied repeal "is not favored" by Missouri courts. *Vining* v. *Probst*, 186 S.W.2d 611, 615 (Mo.App.W.D. 1945). And implied repeal in *both* counts is not entirely supportable with Missouri's legislative timeline. MHRA was last amended in 2017. Mo. RFRA was adopted in 2003. But the Missouri Student Religious Liberties Act was last amended in 2019. So, if anything, the MSRLA right limiting public schools impliedly repeals the MHRA's provision.

But the statutes can be harmonized, because MHRA's exclusivity is limited. It precludes only "claims for injury or damages arising out of an employment relationship." § 213.070. *State ex rel. Church & Dwight Co.* v. *Collins*, 543 S.W.3d 22, 27 (Mo. 2018) held that MHRA is exclusive as to remedies due to employees. Here, Bachman seeks more remedies for rights protected by MRFRA and SRLA. Private

employers do not face injunctions or damages for interference with Free Exercise or Free Speech. These statutes provide remedies beyond employment discrimination.

Second, the Defendants' federal analogies misfire. While the Eighth Circuit has held that Title VII preempts federal RFRA claims, Title VII's exclusivity ends "when the employer's conduct also amounts to a violation of a right secured by the Constitution." *Henley* v. *Brown*, 686 F. 3d 634, 642 (8th Cir. 2012). Thus, even if Title VII preempts RFRA, it does not displace claims for constitutional violations – and Mo. RFRA is Missouri's action to protect its constitutional rights, akin to the federal claim under § 1983. The same logic applies here: Missouri's MHRA does not preempt constitutional and conscience remedies protected by MRFRA and SRLA.

Third, the lower court's reference to *Brandon* v. *Bd. of Educ. of City of St. Louis*, No. 4:22-CV-00635-SRC, 2023 WL 4104293, at *18 (E.D. Mo. June 21, 2023) is unpersuasive. That district court opinion summarily concluded the MHRA is the "more particular" statute than Mo. RFRA in the context of a COVID vaccination claim. But MHRA applies broadly, not more particularly, to all employers with six or more employees. Mo. RFRA and MSRLA target a narrower class: governments and public schools acting in the narrow area of religion.

Read together, the MHRA does not bar Bachman's claims under MRFRA or SRLA. These statutes enforce distinct constitutional rights remedies that Missouri

law protects, in addition to employment remedies. Bachman's state-law claims should be reinstated.

### C.    The lower court abused its discretion in dismissing with prejudice.

Defendants' motion did not request dismissal with prejudice. The lower court's dismissal order does not say whether it was "with prejudice" or "without prejudice." App. 132; R. Doc. 40, at 21. The clerk's judgment stated that the dismissal was with prejudice. App. 133; R. Doc. 41, at 1.

This left Bachman without any chance to amend her alleged failures to plead with specificity, or even to refile claims. Dismissal with prejudice may be warranted if amending the pleading would be futile. *See Pet Quarters, Inc.* v. *Depository Tr. & Clearing Corp.*, 559 F. 3d 772, 782 (8th Cir. 2009). And Bachman never had the opportunity to amend, so there can be no claim "persistent pleading failures" revealed futility here, *see Michaelis* v. *Neb. State Bar Ass'n*, 717 F. 2d 437, 438-39 (8th Cir. 1983).

Amendment would not have been futile, at least as to the lower court's claimed deficiencies. The lower court based some conclusions on arguments that Bachman made "conclusory" statements, without sufficient supporting facts. App. 122; R. Doc. 40, at 11. And it found that, as to free exercise and free speech claims,

Bachman had failed to allege that certain teachers held beliefs different from her own. App. 124; R. Doc. 40, at 13; *also* App. 131; R. Doc. 1, at 20.

As explained above, Bachman believes she has adequately pleaded her claims, but if required, she could likely identify teachers with beliefs different from her own who were allowed to address the students by a female identity. She may plead additional facts about the prohibition on parent communication. To the extent this would cure pleading deficiencies, amendment was not futile, and dismissal with prejudice abused its discretion.

These claims deserved to proceed beyond the pleadings.

## Conclusion

This case asks a simple question: May a public school force a teacher to speak words that violate her faith, and punish her alone for not speaking contrary to her beliefs —despite letting others choose their words freely, and letting them speak the very words denied to the teacher?

The answer is no.

The First Amendment forbids compelled speech. It also forbids religious discrimination, along with Title VII.

Geri Bachman tried to serve all students with dignity while remaining faithful to her beliefs. Indeed, she asked only to avoid certain words, not to impose her faith on others. The District allowed others to use the words Bachman wanted to use. It did not fire her for any failure in educating students; it fired her for violating a student's arbitrary speech-code that singled out religious teachers.

At the pleading stage, that should have been enough. Bachman plausibly alleged that her termination violated the Free Exercise Clause, the Free Speech Clause, Title VII, and Missouri law. Bachman deserved to conduct discovery on her claims.

At worst, if some technical pleading deficiency was present, the lower court should have allowed an amended pleading, not dismissed with prejudice.

This Court should reverse, reinstate Bachman's claims, and remand for further proceedings.

s/Jonathan R. Whitehead
Mo. Bar 56848
Law Offices of Jonathan R Whitehead LLC
229 S.E. Douglas St., Ste. 210
Lee's Summit, Mo 64063
816.398.8305 – Phone
816.278.9131 – Fax
jon@whiteheadlawllc.com
*Attorney for Appellant Geri Bachman*

## Certificates

### Certificate of Compliance with Rule 32(a)

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because this brief contains 12,722 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced, roman typeface with serifs (Equity) using Microsoft Word, set in 14 points.

Date: July 3, 2025

s/Jonathan R. Whitehead

An Attorney for Appellant Geri Bachman

### Certificate of Compliance with Eighth Cir. R. 28A(h)

This brief and addendum have been scanned for viruses and is virus free.

Date: July 3, 2025

s/Jonathan R. Whitehead

An Attorney for Appellant Geri Bachman

CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2025, I electronically filed the above with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Date: July 3, 2025

s/Jonathan R. Whitehead

An Attorney for Appellant Geri Bachman

## CERTIFICATE OF SERVICE

The undersigned attorney for Plaintiff-Appellant certifies that on July 2, 2025, an electronic copy of the Brief of Plaintiff-Appellant was filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Dated: July 3, 2025

*/s/ Jonathan R. Whitehead*
Jonathan R. Whitehead