No. 25-1772

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

**GERI BACHMAN, *Plaintiff-Appellant*,**

**v.**

**HICKMAN MILLS SCHOOL DISTRICT, et al, *Defendants-Appellees*.**

## APPEAL FROM THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF MISSOURI-KANSAS CITY DIVISION
The Honorable Fernando J. Gaitan, Jr.
Case No. 4:23-cv-00931-FJG

## BRIEF OF DEFENDANTS-APPELLEES HICKMAN MILLS SCHOOL DISTRICT, YAW OBENG and DERRICK JORDAN

**FISHER, PATTERSON, SAYLER & SMITH, LLP**

/s/ Paul F. Gordon

| | |
|---|---|
| Steven F. Coronado | MBN 36392 |
| Paul F. Gordon | MBN47618 |
| Jacob D. Bielenberg | MBN 72319 |

9393 W. 110th, #300
Corporate Woods, Bldg. 51
Overland Park, KS 66210
Telephone:  (913) 339-6757
Facsimile:   (913) 660-7919
scoronado@fpsslaw.com
pgordon@fpsslaw.com
jbielenberg@fpsslaw.com
ATTORNEYS FOR APPELLEES

September 10, 2025

# SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

This is an employment case arising under claimed constitutional and state law violations arising from Appellant's refusal to comply with the school district's directive to refer to her students in accordance with their preferred pronouns. Appellant then filed suit in the Western District of Missouri bringing ten claims including several 1st Amendment claims, Title VII claims, and various state law claims.  (App. 8, et seq.; R. Doc. 1, at 1, et seq.). After review, the district court dismissed all these claims on a 12(b)(6) motion, in an order on March 29, 2024. (App. 112, et seq.; R. Doc. 40, at 1, et seq.). Among other things, the district court found Bachman's speech about the students was pursuant to an official duty.  (App. 120; R. Doc. 40, at 9). The district court also found the directive was neutral and generally applicable.  (App. 123-4; R. Doc. 40, at 12-13). Therefore, it held Bachman's complaint failed to state any claims and dismissed with prejudice to refiling. (App. 132; R. Doc. 40, at 21). Appellant now brings the instant appeal.

Appellees respectfully request that this Court set the matter for oral argument and Appellees respectfully requests 20 minutes for said argument.

# **TABLE OF CONTENTS**

SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT .......... ii

TABLE OF CONTENTS ........................................................................... iii

TABLE OF AUTHORITIES .................................................................... v

STATEMENT OF ISSUES ON APPEAL ............................................... 1

STATEMENT OF THE CASE .................................................................. 3

SUMMARY OF THE ARGUMENT ....................................................... 7

ARGUMENT .............................................................................................. 8

STANDARD OF REVIEW FOR ALL ISSUES ON APPEAL ............... 8

I.   The district court did not err in dismissing Appellant's free exercise claims under Counts 3, 9, and 10 when the directive was neutral and generally applicable. .................................................................................... 9

    A.   The directive at issue was neutral and generally applicable. ............... 9

    B.   The Court did not err in applying rational basis review to Appellant's Free exercise claims. ........................................................................... 11

II.  The district court did not err in dismissing Appellant's free speech claims under Counts 1, 2, and 4 since the speech is not a matter of public concern and was pursuant to appellant's official duties. ........................................ 13

    A.   The district court did not err because the speech was not a matter of public concern. .................................................................................. 15

    B.   The district court did not err because the speech was pursuant to Appellant's official duties. ................................................................. 16

III. The district court did not err in dismissing Appellant's Title VII Discrimination and Retaliation claims under Counts 5 and 6 as the Appellees did not engage in religious discrimination and Appellant was not engaged in protected activity ........................................................................................ 21

    A.   The district court did not err in dismissing Appellant's Title VII claim for religious discrimination under Count 5 because Appellant did meet the requirements of *Twombly* and *Iqbal*, did not raise an inference of discrimination, and her requested accommodation would result in an undue hardship. .................................................................................. 21

        i.   *Appellant failed to meet the necessary pleading requirements under Twombly and Iqbal.* ....................................................... 22

ii.   *Appellant failed to raise an inference of discrimination.*............26

iii.  *The requested accommodation would result in hardship.*............27

B.   The district court did not err in dismissing Appellant's Title VII claim for religious discrimination under Count 6 because Appellant failed to show she was engaged in protected activity. .......................................30

IV.  The district court did not err in dismissing Appellant's state law claims (Counts 7 and 8) when they were preempted by the Missouri Human Rights Act and when there is no precedent for allowing claims for money damages under the Missouri Constitution.................................................................32

A.   The Missouri Human Rights act bars Appellant's state law claims. ..32

B.   There is no right to damages under the Missouri Constitution............33

C.   The district court did not abuse its discretion in not allowing Appellant to replead. ............................................................................................34

CONCLUSION.............................................................................................35

CERTIFICATE OF COMPLIANCE......................................................................37

<u>**Cases**</u>

*Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 797 (11th Cir. 2022) ..................................................................................13

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)............................................... 9, 22, 23

*Bakhtiari v. Lutz*, 507 F.3d 1132, 1137 (8th Cir. 2007) .........................................31

*Barker v. Mo. Dep't of Corr.*, 513 F.3d 831, 834 (8th Cir. 2008).........................31

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)........................... 8, 10, 22, 23

*Blackwell v. Alliant Techsystems, Inc.*, 822 F.3d 431, 436 (8th Cir. 2016).............30

*Bostock v. Clayton County*, 140 S. Ct. 1731 (2020)...............................................12

*Braden v. Wal-Mart Stores, Inc.*, 588 F. 3d 585, 594 (8th Cir. 2009).....................8

*Brandon v. Bd. of Educ. of City of St. Louis*, 2023 WL 4104293 at *19 (E.D. Mo. 2023).................................................................................... 32, 33

*Bruning v. City of Omaha, Nebraska*, 6 F.4th 821, 825 (8th Cir. 2021) .................12

*Carton v. General Motor Acceptance Corp.*, 611 F. 3d 451, 454 (8th Cir. 2010) ....8

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*, 508 U.S. 520, 535 (1993) 9, 11

*City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440 (1985).........12

*Cole v. Group Health Plan, Inc, 105 F.4th 1110 (8th Cir. 2024)* ..........................27

*Collins-Camden Partnership v. County of Jefferson*, 425 S.W.w3d 2210, 214 (Mo. App. 2014)...............................................................................34

*Connick v. Myers*, 461 U.S. 138, 146 (1983)..........................................................16

*Dunn v. Carroll*, 40 F.3d 287, 291 (8th Cir. 1994)................................................14

*Equal Emp. Opportunity Comm'n v. Kroger Ltd. P'ship I*, 608 F. Supp. 3d 757, 790 (E.D. Ark. 2022).........................................................................31

*Equal Emp. Opportunity Comm'n v. N. Mem'l Health Care,* 908 F.3d 1098, 1102 (8th Cir. 2018)...........................................................................31

*F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315, (1993)..................................12

*Garcetti v. Ceballos*, 547 U.S. 410, 417-419 (2006) ........................................ 14, 16

*Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012) ......................22

*Gilmore v. Cnty. of Douglas, State of Neb.*, 406 F.3d 935, 940 (8th Cir. 2005) .....12

*Harrell v. Donahue*, 638 F.3d 975, 984 (8th Cir. 2011) .........................................33

*Innovative Home Health Care, Inc. v. P.T. – O.T. Associates of the Black Hills*, 141 F.3d 1284 (8th Cir. 1998) ........................................................................................34

Kennedy v. Bremerton Sch. Dist., 142 S. Ct. 2407, 2421–22 (2022) ......................9

*Kiel v. Mayo Clinic Health Sys. Se. Minnesota*, 2023 WL 5000255, at *7 (D. Minn. Aug. 4, 2023) ...........................................................................................................26

*Kluge v. Brownsburg Community Sch. Corp.*, 432 F. Supp. 3d 823, 834 (S.D. Ind. 2020) .............................................................................................................. 10, 16, 18

*Kluge v. Brownsburg Community School Corporation*, No. 1:19-cv-02462-JMS-KMB, 2024 WL 1885848, (S. D. Ind. April 30, 2024) .......................................27

*Lane v. Franks*, 573 U.S 228, 238 (2014) ...............................................................16

*Lyons v. Vaught*, 875 F.3d 1168, 1172 (8th Cir. 2017) ..........................................13

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 792 (1973) ............................21

*Moody v. Hicks*, 956 S.W. 2d 398 (Mo. App. 1997) ...............................................34

*Papasan v. Allain*, 478 U.S. 265, 286 (1986) ........................................................22

*Perry v. Sindermann*, 408 U.S. 593, 597 (1972) ....................................................13

*Rankin v. McPherson*, 483 U.S. 378, 383 (1987) ...................................................13

*Richard v. USD 475 Geary Cnty., KS Sch. Bd.*, No. 5:22-CV-04015-HLT-GEB, 2022 WL 1471372, at *6 (D. Kan. May 9, 2022) ...............................................19

*Seaworth v. Pearson*, 203 F.3d 1056, 1057 (8th Cir. 2000) ...................................27

*United States v. Seeger*, 380 U.S. 163, 172 (1965) ...............................................26

*Willey v. Sweetwater County School District #1 Board of Trustees*, 2023 WL 9597101, at *8 (D. Wyo. 2023 ...........................................................................18

## Statutes

RSMo § 213.070 ................................................................................... 32, 33

## Other Authorities

42 U.S.C. § 2000e(j) ................................................................26

42 U.S.C. § 2000e–3(a) ............................................................30

Executive Order 14021 ............................................................12

## **Constitutional Provisions**

U.S. Const. amend XIV 20 U.S.C. 1681 .................................12

<u>**STATEMENT OF ISSUES ON APPEAL**</u>

1.     Whether the district court erred in dismissing Appellant's free exercise claims under Counts 3, 9, and 10, when the directive was neutral and generally applicable?

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

*F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307 (1993)

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993).

*Kluge v. Brownsburg Community Sch. Corp.*, 432 F. Supp. 3d 823 (S.D. Ind. 2020)

2.     Whether the district court erred in Dismissing Appellant's Free Speech claims under Counts 1, 2, and 4, when the speech is not a matter of public concern and was pursuant to appellant's official duties.

*Lane v. Franks*, 573 U.S 228 (2014)

*Garcetti v. Ceballos*, 547 U.S. 410 (2006)

*Willey v. Sweetwater County School District #1 Board of Trustees*, 2023 WL 9597101 (D. Wyo. 2023)

*Kluge v. Brownsburg Community Sch. Corp.*, 432 F. Supp. 3d 823 (S.D. Ind. 2020)

3.     Whether the district court erred in dismissing Appellant's Title VII Discrimination and Retaliation claims under Counts 5 and 6, when the Appellees did

not engage in religious discrimination and Appellant was not engaged in protected activity.

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)

*Kluge v. Brownsburg Community School Corporation*, No. 1:19-cv-02462-JMS-KMB, 2024 WL 1885848, (S. D. Ind. April 30, 2024)

4.      Whether the district court erred in dismissing Appellant's State law claims when they were preempted by the Missouri Human Rights Act and when there is no precedent for allowing claims for money damages under the Missouri Constitution.

*Harrell v. Donahue*, 638 F.3d 975 (8th Cir. 2011)

*Brandon v. Bd. of Educ. of City of St. Louis*, 2023 WL 4104293 (E.D. Mo. 2023)

*Collins-Camden Partnership v. County of Jefferson*, 425 S.W.3d 210 (Mo. App. 2014)

*Moody v. Hicks*, 956 S.W. 2d 398 (Mo. App. 1997)

## STATEMENT OF THE CASE

Appellant Geri Bachman taught Girls' Physical Education at Smith-Hale Middle School during the 2021-2022 school year. (App. 29; R. Doc. 1, at 5, ¶35). Appellant is a Christian who believes that the rejection of one's biological sex is a rejection of the action of God within that person. (App. 29; R. Doc. 1, at 5-6, ¶¶ 36, 39). Appellant also believes that she cannot affirm as true those ideas and concepts that she believes are not true. (App. 29; R. Doc. 1, at 6, ¶ 40). She believes that doing so would violate biblical, divinely ordained commands against dishonesty and lying. (App. 29; R. Doc. 1, at 6, ¶¶ 39-40). Appellant believes that to assist another in affirming that individual's rejection of their biological sex would make her complicit in the sin of rejecting the image of God in that individual's life. (App. 29; R. Doc. 1, at 6, ¶ 41). Appellant believes that referring to a male student as a female or a female student as a male is sinful. (App. 29; R. Doc. 1, at 6, ¶ 43). Appellant is aware that some students express gender identities that are inconsistent with their sex and request to be addressed by a different name consistent with their new identity and pronouns that are inconsistent with their sex. (App. 29; R. Doc. 1, at 7, ¶ 48). Appellant objects to participating in any student's transition because she believes that participating in this intervention creates an unreasonable risk of harm to the student. (App. 29; R. Doc. 1, at 7, ¶52).

Appellant alleges Principal Jordan ordered her to use any name, pronoun or gender identity claimed by a student, even if it was inconsistent with that student's legal name and sex (the School District's "directive"). (App. 29; R. Doc. 1, at 9, ¶ 61). Appellant also alleges the School District's directive was not neutral toward religion or generally applicable and that other teachers were allowed to use a student's legal name or another name that was not inconsistent with a particular student's sex. (App. 29; R. Doc. 1, at 10, ¶ 68). Appellant further alleges she was terminated after requesting a religious accommodation from the directive. (App. 29; R. Doc. 1, at 10, ¶ 68). Under the School District's directive, students may select and express any gender identity they choose because the expression is based entirely on an individual student's feelings. (App. 29; R. Doc. 1, at 10, ¶ 69).

On October 7, 2021, Appellant was summoned to a meeting with the principal. (App. 29; R. Doc. 1, at 11, ¶ 75). Principal Jordan ordered Appellant to address students by their chosen names and pronouns. (App. 29; R. Doc. 1, at 11, ¶¶ 75-76). Appellant explained her religious beliefs prevented her from describing biological females as males or vice versa. (App. 29; R. Doc. 1, at 11, ¶ 77). [1] When she left the meeting, she understood that Mr. Jordan had agreed that she could fulfill her teaching duties without violating her religious beliefs by using gender neutral language. (App.

---

[1] For purposes of appeal, Appellees' Statement of the Case is based on the district court's order of dismissal. Appellees do not admit or concede the facts contained therein which have been pled by Appellant.

29; R. Doc. 1, at 11, ¶ 79). Appellant alleges that Jordan's agreement constituted an accommodation of her religious beliefs, and she believed that she was following the policies and instructions of the principal after the meeting. (App. 29; R. Doc. 1, at 11, ¶80).

In January 2022, the District received two separate student statements, which indicated that Appellant refused to address them by the gender they identified with. (App. 29; R. Doc. 1, at 11 ¶ 82). Appellant stated in a meeting on January 26, 2022, that she would only refer to the students by the gender and name in the District's computer system. (App. 29; R. Doc. 1, at 12, ¶ 84). The computer system identified the students as female, and both students were enrolled in Appellant's class and gave names consistent with their biological sex. (App. 29; R. Doc. 1, at 12, ¶¶ 85-86). On February 9, 2022, Appellant received a letter of reprimand from Jordan. (App. 29; R. Doc. 1, at 12, ¶ 89). The letter stated Appellant failed to follow Jordan's directive regarding "acknowledging students' right of choice and remaining neutral regarding religious matters" and was "a blatant disregard of [the District's] policies . . .." (App. 29; R. Doc. 1, at 12, ¶ 90). The reprimand letter said Appellant was insubordinate and her conduct violated Board Policies AC, GBCB, and HMC-1 Standards of Professional Commitment, as well at Title IX. (App. 29; R. Doc. 1, at 12, ¶ 93). Appellant submitted a rebuttal letter stating that she received no written documentation indicating the two students wanted to be known as boys and the

school's computer system referred to them as females. (App. 29; R. Doc. 1, at 13, ¶ 96). After the reprimand letter, Appellant noted the two students involved were inconsistent with their demands such that the names and genders demanded of other teachers were different from the demands made of her. (App. 29; R. Doc. 1, at ¶ 97).

On March 14, 2022, Appellant was notified Mr. Jordan would recommend that the School Board terminate her contract at the end of the school year for violating the Missouri Teacher Standards on "Classroom school and community culture" and "professional rights, responsibilities, and ethical practices," related to the gender of the students. (App. 29; R. Doc. 1, at 14, ¶ 109). On March 25, 2022, Appellant was notified in writing that the School Board had voted not to renew her contract. (App. 29; R. Doc. 1, at 14 ¶110). On July 31, 2022, Appellant's contract ended, and she was terminated. (App. 29; R. Doc. 1, at 14, ¶ 112).

Appellant timely filed a complaint with the EEOC which issued her a right to sue letter on September 25, 2023. (App. 29; R. Doc. 1, at 15, ¶ 116). She then filed suit in the Western District of Missouri. (App. 8, et seq.; R. Doc. 1, at 1, et seq). After review, the district court dismissed all these claims on a 12(b)(6) motion, in an order on March 29, 2024. (App. 112, et seq.; R. Doc. 40, at 1, et seq). The district court found Appellant's speech about the students was pursuant to an official duty. (App. 120; R. Doc. 40, at 9). The district court also found the directive was neutral

and generally applicable. (App. 123-4; R. Doc. 40, at 12-13). Therefore, it held Appellant's complaint failed to state any claims and dismissed with prejudice to refiling. (App. 132; R. Doc. 40, at 21).

## SUMMARY OF THE ARGUMENT

Appellant asserted several claims based on her prior employment as a teacher with the Defendant School District (District), including several 1st Amendment claims, Title VII claims, and various state law claims. All of Appellant's claims stem from a directive issued by the District regarding teachers calling students by the name the student chooses. The district court properly dismissed all of these claims.

First, Appellant's free exercise claims under Counts 3, 9, and 10 were properly dismissed because the directive was neutral and generally applicable. Accordingly, the district court's rational basis refusal was correct as was its refusal to apply strict scrutiny.

Second, Appellant's free speech claims under Counts 1, 2, and 4 were properly dismissed as her alleged speech was not a matter of public concern and was made pursuant to her official duties as a teacher.

Third, Appellant's Title VII claims under Counts 5 and 6 were properly dismissed primarily for pleading failures under *Twombly* and *Iqbal,* but also because Appellant was not engaged in a protected activity, did not raise an

inference of discrimination, and requested an accommodation that would result in undue hardship in that it would require the District to discriminate against students with non-traditional pronouns.

Fourth, Appellant's state law claims were also properly dismissed. The first reason the dismissal was proper is because the Missouri Human Rights Act serves as Appellant's exclusive remedy. The claims arising under the Missouri Constitution were properly dismissed because there is no right for a private individual to sue for damages thereunder.

Finally, the district court did not abuse its discretion in not permitting Appellant to replead because Appellant could have sought relief under Federal Rules of Civil Procedure 59 and 60 but failed to do so.

## ARGUMENT

## STANDARD OF REVIEW FOR ALL ISSUES ON APPEAL

This Court reviews the grant of a motion to dismiss under Rule 12(b)(6) under a de novo standard. *Carton v. General Motor Acceptance Corp.*, 611 F. 3d 451, 454 (8th Cir. 2010). In conducting this review, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in Bachman's favor. *Braden v. Wal-Mart Stores, Inc.*, 588 F. 3d 585, 594 (8th Cir. 2009). Dismissal is appropriate only where the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007);

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Other than the aforementioned standard, Appellees take no umbrage with Appellant's standards of review, and therefore they are not restated or modified herein.

## I. The district court did not err in dismissing Appellant's free exercise claims under Counts 3, 9, and 10 when the directive was neutral and generally applicable.

### A. The directive at issue was neutral and generally applicable.

"A plaintiff may carry the burden of proving a free exercise violation in various ways, including by showing that a government entity has burdened his sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'" *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421–22 (2022). Government action based upon neutral, generally applicable rules are subject to rational basis review, even if the application of the neutral rule "has the incidental effect of burdening a particular religious practice." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*, 508 U.S. 520, 535 (1993).

Knowing Appellant's requirement to prove the directive was not neutral or generally applicable, Appellant offered only vague, conclusory statements meant to give the false impression the directive was not generally applicable. Plaintiff alleges in Paragraph 68 of Appellant's Complaint, "Defendants' policy, at least as applied here is not neutral toward religion or generally applicable; other teachers were allowed to use a student's legal name, or another name that was not inconsistent with

9

a particular student's sex . . ." In regard to the conclusory allegation "Defendants'

policy, at least as applied here is not neutral toward religion or generally applicable,

. . ." such a conclusory allegation devoid of supporting facts is insufficient to state a

cause of action. *See Twombly*, 550 U.S. at 555. The remainder of the paragraph gives

the false impression Appellees permitted other teachers to violate the directive. The

issue is not whether teachers were allowed to call a student by the student's legal

name or other name. Instead, the relevant issue is whether other teachers were

permitted by Appellees to refer to students by their non-preferred names and

pronouns when communicating with them. However, **there is no allegation the

School District permitted any teacher to not comply with the directive to refer

to students by their preferred names/pronouns).[2]**

In *Kluge v. Brownsburg Community Sch. Corp.*, the district court considered

a teacher's claims that his schools' requirement to use student's chosen names

"conflicted with his religious beliefs against affirming gender dysphoria," in

violation of the Free Exercise Clause. 432 F. Supp. 3d 823, 834 (S.D. Ind. 2020).

*Kluge* is directly on point regarding the non-viability of Plaintiff's claims. The court

granted the defendants' motion to dismiss on this issue, finding the school's directive

---

[2] On Appeal, Appellant also argues the directive granted secular speakers rights denied to Appellant. However, there are no "secular speakers," there are only teachers. Again, there is no allegation **any** teacher was permitted by the School District to disobey the directive.

was neutral and generally applicable because "it applie[d] to all faculty, not just to faculty members of a certain religion." *Id.* at 839. "[E]very teacher, regardless of religious belief, was required to address every student by the name" that the students chose, 'regardless of what that name was or why.' *Id.* The court dismissed the teacher's Free Exercise claim based on this policy.

Just as the directive in *Kluge*, the School District's directive is neutral and generally applicable. The School District's directive applied to every teacher regardless of religious belief and the directive was to address students by the name chosen by each student regardless of what the name was or why it was chosen. Additionally, the directive is rationally related to the District's attempt to follow laws regarding gay and transgender rights in the school setting, namely Title IX. Plaintiff does not allege the directive was adopted to burden religious beliefs or conduct. Accordingly, the district court did not err in dismissing Appellant's Free Exercise Claims.

## B. The Court did not err in applying rational basis review to Appellant's Free exercise claims.

Government action based upon neutral, generally applicable rules are subject to rational basis review, even if the application of the neutral rule "has the incidental effect of burdening a particular religious practice." *City of Hialeah,* 508 U.S. at 535. Under the rational basis test, policies or directives carry a "strong presumption of validity" and the District is given "wide latitude" to enact social and economic

policies if there is any reasonably conceivable state of facts that could provide a rational basis for the enactment's classifications. *See City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440 (1985).

In other words, a legislative choice is not subject to courtroom fact-finding and may be based on **rational speculation unsupported by evidence or empirical data**. *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315, (1993). In this sense, all that must be shown is "**any reasonably conceivable state of facts** that could provide a rational basis for the classification." *Gilmore v. Cnty. of Douglas, State of Neb.*, 406 F.3d 935, 940 (8th Cir. 2005). By extension, "**Any material difference** between how the plaintiff and those allegedly treated more favorably are situated is sufficient to provide a rational basis for the differential treatment." *Bruning v. City of Omaha, Nebraska*, 6 F.4th 821, 825 (8th Cir. 2021).

Here, and as established above, the directive was neutral and generally applicable and as such, rational basis review applied to the district court's decision. A desire to comply with changes under Title IX and several successfully litigated claims regarding the same provide more than enough justification for the directive under rational basis review.[3]

---

[3] Even if strict scrutiny were applied, Appellees' policy would still be constitutional. The federal government requires non-discrimination and equal treatment on the basis of sex/gender. *See e.g.*, U.S. Const. amend XIV 20 U.S.C. 1681 *et. seq., see also Bostock v. Clayton County*, 140 S. Ct. 1731 (2020) and Executive Order 14021. Of note, after the Supreme Court issued the *Bostock* opinion, the Department of

Accordingly, the district court did not err in dismissing Appellant's free exercise complaints under Counts 3, 9, and 10 and this Court should affirm the district court's opinion.

## II. The district court did not err in dismissing Appellant's free speech claims under Counts 1, 2, and 4 since the speech is not a matter of public concern and was pursuant to appellant's official duties.

A public employer "may not discharge an employee on a basis that infringes [upon] that employee's constitutionally protected interest in freedom of speech." *Rankin v. McPherson*, 483 U.S. 378, 383 (1987) (citing *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)). To establish employer retaliation in violation of the First Amendment, a public employee must prove: "(1) he engaged in activity protected by the First Amendment; (2) the defendants took an adverse employment action against him; and (3) the protected conduct was a substantial or motivating factor in the defendants' decision to take the adverse employment action." *Lyons v. Vaught*, 875 F.3d 1168, 1172 (8th Cir. 2017).

---

Education has provided guidance that it believes sex discrimination under Title IX covers discrimination based on sexual orientation and sexual identity. While *Bostock* dealt with discrimination under Title VII, Courts have held that sex discrimination under Title IX covers both sexual orientation and sexual identity. *Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 797 (11th Cir. 2022). In allowing *Bachman* to discriminate against transgender students the District would violate the non-discrimination laws noted above. Accordingly, the directive was narrowly tailored (applies to all teachers regardless of religious belief, for a compelling government purpose (preventing discrimination).

Courts addressing claims by public employees who contend they have been discharged for exercising their right to free speech must employ a two-step inquiry. *Dunn v. Carroll*, 40 F.3d 287, 291 (8th Cir. 1994). The first step is to determine whether the employee spoke as a citizen on a matter of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 417-419 (2006). If the answer is "no," the employee has no First Amendment cause of action based on the employer's reaction to the speech. *Id.* at 418. (citation omitted). If the answer is "yes," then the possibility of a First Amendment claim arises, and the second step is to determine whether the government entity had an adequate justification for treating the employee differently from any other member of the general public. *Id.* (citation omitted)

When considering whether an employee spoke as a private citizen, the fact that the employee spoke inside his workplace, rather than publicly, is not dispositive. *Id.* at 420. Neither is the fact that the speech "concerned the subject matter of [his] employment." *Id.* at 421. However, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.*

**A.    The district court did not err because the speech was not a matter of public concern.**

In *Kluge*, one of the reasons the court dismissed Plaintiff's speech claims was because the speech (which is the same speech at issue in the present action) was not a matter of public concern. The court in *Kluge* explained:

> However, **the Court also concludes that Mr. Kluge's choice as to how to address a given student did not involve a matter of public concern**. To be sure, issues relating to the treatment of individuals based on their gender identity are of great public importance. *See Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31*, ⸺ U.S. ⸺, 138 S. Ct. 2448, 2476, 201 L.Ed.2d 924 (2018) (recognizing that "gender identity" is a "sensitive political topic[ ]" that is "undoubtedly [a] matter[ ] of profound value and concern to the public"). However, Mr. Kluge was not conveying a message concerning such matters when he refused to call students by their names as listed in PowerSchool or referred to students by last name only, because **the act of referring to a particular student by a particular name does not contribute to the broader public debate on transgender issues.** Instead, choosing the name to call a student constituted a private interaction with that individual student and a private statement about Mr. Kluge's subjective perception of that student. In addition, according to Mr. Kluge's own allegations, the only point of his speech was to address students. He did not tell students that he had opinions about using transgender students' preferred names or explain why he was using last names only. [Filing No. 15 at 10.] **Thus, Mr. Kluge's speech—merely stating (or refusing to state) names and pronouns without explaining that his opposition to "affirming" transgender students was the reason for doing so— adds little to the public discourse on gender identity issues, and therefore is not the kind of speech that is valuable to the public debate**. *Cf. Garcetti*, 547 U.S. at

420, 126 S.Ct. 1951 (acknowledging that underlying the public concern inquiry is "the importance of promoting the public's interest in receiving the well-informed views of government employees engaging in civic discussion").

Because the speech at issue was pursuant to Mr. Kluge's official duties as a public employee and did not involve a matter of public concern, he cannot maintain a cause of action for his employer's regulation of or reaction to his speech. *See id.* at 418, 126 S.Ct. 1951.

*Kluge*, 432 F. Supp 3d, at 839.

In near identical fashion, Appellant's stating (or refusing to state) students' names or pronouns does not add to the public discourse on gender identity issues, and therefore it is not the kind of speech that is valuable to the public debate. Accordingly, such speech is not a matter of public concern, and the claims fail as a matter of law. *See Connick v. Myers*, 461 U.S. 138, 146 (1983).

## B. The district court did not err because the speech was pursuant to Appellant's official duties.

[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens on issues of public concern for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline. *Garcetti*, 547 U.S. at 420-21. Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. *Id*. In *Lane v. Franks*, 573 U.S 228, 238 (2014), the Court further explained that "[t]he critical

question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." Under *Garcetti*, when a public employee speaks on a matter of public concern pursuant to official duties, the speech is unprotected against employer retaliation. If it was pursuant to his official duties, he has no First Amendment claim. *Id.*

Appellant's alleged speech is solely pursuant to her official duties as a teacher. How Appellant addressed students is clearly in the scope of her employment. This is not a situation where a teacher is commenting outside her employment (such as a letter to the local newspaper). It is evident from Appellant's Complaint the speech at issue was pursuant to her official duties, and therefore not protected; as shown below, Federal courts have found claims for this exact speech to be unprotected.

*Kluge* is again on point with the present action. In *Kluge*, the teacher brought almost identical claims against the defendant school due to adverse employment actions because of his refusal to abide by the school district's directive mandating teachers refer to students by the preferred names and gender pronouns. Just as in the present case, the plaintiff brought several claims against the school, including claims for retaliation under the First Amendment, content and viewpoint discrimination under the First Amendment, and compelled speech under the First Amendment (collectively the "Speech Claims"). On the school's motion, the court dismissed the plaintiff's Speech Claims. One of the two bases on which the court dismissed

plaintiff's Speech Claims was the speech was not protected because it was pursuant to plaintiff's official duties as a teacher. The *Kluge* courts explained its ruling as follows:

> **Here, Mr. Kluge has failed to state any claim under the First Amendment because, as a matter of law, the speech at issue is not constitutionally protected.** Importantly, he is not asserting that he was disciplined for criticizing or opposing the Policy, but that he was disciplined for refusing to follow it in his classroom by refusing to call students by the first names listed in PowerSchool. **Mr. Kluge's own allegations establish that the way in which he addresses students is part of his official duties as a teacher. Mr. Kluge expressly alleges that BCSC sought to regulate his interactions with students inside school and in the context of the school day or school activities.** [Filing No. 15 at 15 (alleging that BCSC applies its "speech code policies to regulate all interactions faculty members have with students in the classroom or within the school").] While addressing students by name may not be part of the music or orchestra curriculum, it is difficult to imagine how a teacher could perform his teaching duties on any subject without a method by which to address individual students. Indeed, addressing students is necessary to communicate with them and teach them the material—as the Seventh Circuit has stated, how teachers relate to students is part of their jobs, and running a classroom is a "core academic dut[y]." Wozniak, 932 F.3d at 1010. Thus, the speech at issue was part of Mr. Kluge's official duties, and this alone is sufficient to preclude any free speech claim under the First Amendment.

*Kluge*, 432 F.Supp.3d at 838-839.

In another case similar to the present case, *Willey v. Sweetwater County School District #1 Board of Trustees*, 2023 WL 9597101, at *8 (D. Wyo. 2023), a

teacher/parent brought claims against her employer school district regarding plaintiff's adherence to the school district's directive that staff must use a student's preferred/chosen name or pronoun in all communications. The plaintiff's claims included a claim for violation of her right to free speech. The defendant school district filed a motion to dismiss. Citing *Kluge*, the court dismissed plaintiff's claim for violation of her right to free speech because the speech was not protected because it was pursuant to her duties as a teacher.[4] The court stated

> The Court is not persuaded that calling students a preferred name, including one that does not align with a student's biological sex, forces Mrs. Willey to forgo her First Amendment right to free speech.

\*\*\*

---

[4] Appellant also argues the policy prohibits her asking "Student A's Parents about the Student A's Preferences." *See* App. 21; R. Doc. 1, at 14, ¶ 102. She argues this is grounds for reversal based on *Richard v. USD 475 Geary Cnty., KS Sch. Bd.*, No. 5:22-CV-04015-HLT-GEB, 2022 WL 1471372, at \*6 (D. Kan. May 9, 2022). However, the policy in *Richard* "prohibits teachers not only from initiating communication with parents for the express purpose of disclosing preferred names and pronouns, but it also prohibits teachers from revealing preferred names and pronouns as part of a communication with parents about an unrelated matter, such as grades or attendance." *Id.* at \*4. Appellants reliance on *Richard* is misplaced, however. There, the court had a developed record, conducted a hearing pursuant to a request for preliminary hearing, and found the policy facially allowed secular individuals to avoid the policy, i.e., administration or a counselor. This matter concerns a motion to dismiss, however, where Appellant has failed to plead her claim. In fact, she fails to plead specifically what the out-of-school policy is, whom it was directed to and what the repercussions would be. She simply avers she asked to reach out to one student's parents and was denied the request. Even if the Court were to entertain such an argument from Appellant, such speech would still be made pursuant to her official duties, would concern only one student and not a matter of public concern, and would therefore still not allow Appellant to plead a viable claim.

> **Accordingly, the Court finds that referring to students by their preferred names and pronouns in the classroom and in written, electronic, and verbal communications relating to the classroom, are part of a teacher's official duties.** Likewise, communicating with parents is also part of a teacher's official duties. Thus, under Janus, the District may require its teachers to deliver a lawful message, including referring to students by preferred names and pronouns. Failure to abide by this policy is not speech protected by the First Amendment. The Court finds that Mrs. Willey has failed to state a claim upon which relief may be granted, and so Ms. Willey's Fourth Claim is dismissed.

*Id.* at *8-9 (emphasis added).

In this instance, Appellant does not dispute that speech made pursuant to a person's official duties is not protected under the U.S. Constitution. Instead, ignoring existing case authority, Plaintiff makes an unsupported specious argument Plaintiff's alleged speech was not part of official duties as a teacher. Plaintiff essentially argues that how Plaintiff spoke to students during school was not part of her job duties as it did not concern certain concepts about health and physical education. This position is misguided, however, and contrary to both *Kluge*[5] and

---

[5] Like Appellant's Response in Opposition to the Motion to Dismiss, Appellant again suggests *Kluge* is bad law. Any implication *Kluge* is not good law for the issues for which it was cited is false. *Kluge* was only vacated regarding Title VII issues, but Defendants did not cite *Kluge* regarding Title VII claims; instead, Defendants only cited *Kluge* in support of dismissal of Plaintiff's First Amendment claims. However, since Appellant filed her Response in Opposition, the *Kluge* trial court, on remand, dismissed the plaintiff's Title VII religious discrimination claim for the same reason the Court should affirm the Court's Title VII claims in the present case. *Kluge* is substantively indistinguishable from the present case. Both *Kluge* and

*Wiley*.  Accordingly, the district court's determination that the alleged speech was pursuant to Appellant's official duties should be affirmed.

In sum, Appellant's alleged speech was not a matter of public concern and was made pursuant to her official duties.  As such, the district court did not err, and this Court should affirm its dismissal of Appellant's Free speech claims under Counts 1, 2, and 4.

**III.** **The district court did not err in dismissing Appellant's Title VII Discrimination and Retaliation claims under Counts 5 and 6 as the Appellees did not engage in religious discrimination and Appellant was not engaged in protected activity**

**A.** **The district court did not err in dismissing Appellant's Title VII claim for religious discrimination under Count 5 because Appellant did meet the requirements of *Twombly* and *Iqbal*, did not raise an inference of discrimination, and her requested accommodation would result in an undue hardship.**

To establish a prima facie case of religious discrimination under the familiar *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 792 (1973) framework, a plaintiff must show: (1) she is a member of a protected class because of her religious beliefs, (2) she met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination. *See Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir.

---

*Willey* are directly on point and recognize the exact "speech" at issue in the present case (requiring teachers to refer to students by the names and pronouns of their choosing) is not protected by the First Amendment because such speech is pursuant to the duties of a teacher.

2012). Circumstances giving rise to an inference of discrimination include treating similarly situated employees who are not members of the protected class in a different manner. *Id.* at 853–54.

### i. *Appellant failed to meet the necessary pleading requirements under Twombly and Iqbal.*

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.,* a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. *Twombly*, 550 U.S. at 555; *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true[6], to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of

---

[6] The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)

entitlement to relief." *Id.* Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 557. Specifically, as the Court held in *Twombly* and *Iqbal*, the pleading standard Rule 8 announces does not require "detailed factual allegations," but **it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.** *Iqbal*, 556 U.S. at 678.

Indeed, even *Iqbal's* analysis is appropriate in the case at bar. There, the Court found the Respondent's complaint had not "'nudged [his] claims' of invidious discrimination across the line from conceivable to plausible." *Id.* at 680. There the Respondent pled various elements of his underlying claim, even identifying certain individuals as the architects of an invidious policy wherein a group of individuals knew of, condoned, and willfully and maliciously agreed to subject [him]" to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." *Id.* Respondent pled the alleged wrongdoers "adopted a policy "'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group," *Id.* Ultimately the Court concluded those allegations were simply conclusory and not entitled to a presumption of truth. *Id.* Specifically, the Court concluded the "complaint does not contain any factual allegation sufficient to plausibly suggest petitioners' discriminatory state of mind." *Id.*

The same is true of Appellant's allegations in the case at bar. Appellant suggests numerous topics such as inquiries into the validity of comparators or whether Appellant met her employer's legitimate expectations are issues better served for summary judgment. Respectfully, Appellees urge that these issues are proper in the context of assessing the viability of Appellant's claims as factually supported as opposed to merely conclusory. The fundamental issues with Appellant's claims are that they are all merely conclusory and require the Court to make inferences without factual support. For example, for the arguments under the legitimate expectations[7] prong of the *McDonnell Douglas* burden shifting analysis, Appellant suggests: "Bachman was hired, so the required inference can be drawn that she met the minimum qualifications to teach." *Appellant's Brief*, at 45. Basically, that statement says, "Bachman was hired" and nothing more. Further, being hired is not the same as meeting legitimate expectations during employment and Appellant failed to speak to that issue at all.

Appellant's allegations regarding discrimination and discriminatory intent are similarly conclusory:

---

[7] Appellees respectfully suggest this Court need not reach the legitimate expectations or comparators inquiries below as the claims are facially insufficient under Rule 8 and were properly dismissed for that reason alone.

- "Defendants punished Plaintiff and ultimately caused her contract to not be renewed because of her religious beliefs and practices." App. 29; R. Doc. 1, at 22, ¶186.

- "Defendants Discrimination against plaintiff and refusal to accommodate Plaintiff's religious beliefs and practices violated Title VII." App. 29; R. Doc. 1, at 22, ¶182.

- "Plaintiff's contract would have been renewed but for the discrimination against her religiously motivated beliefs and practices" App. 29; R. Doc. 1, at 22, ¶188.

Pursuant to *Twombly* and *Iqbal*, these are exactly the type of "unadorned, the-defendant-unlawfully-harmed-me accusations" that the United States Supreme Court held were insufficient. In reality, there is nothing in the Complaint by way of non-conclusory factual allegations that would suggest animus or Appellees' discriminatory state of mind. This is exactly what the district court found when it determined "plaintiff has failed to plausibly allege a prima face [sic] case of religious discrimination." (R. Doc. 40 at 15).

Based on the foregoing, the district court did not err in dismissing Appellant's Title VII claims as failing to plausibly allege the requirements of the claim, and this Court should affirm that decision.

### *ii.     Appellant failed to raise an inference of discrimination.*

Under Title VII, the term "religion" encompasses "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). In a Title VII analysis, courts must distinguish between those beliefs that constitute religion, which are protected, and those that are "essentially political, sociological, philosophical" or "merely personal moral code[s]," as these are not afforded the same weighty protections. *See United States v. Seeger*, 380 U.S. 163, 172 (1965). To determine whether a belief warrants religious protection, "the Eighth Circuit considers whether the [belief] address[es] 'fundamental and ultimate questions having to do with deep and imponderable matters,' if the teachings are comprehensive in nature,' or isolated, and if there are 'certain formal and external signs' present." *Kiel v. Mayo Clinic Health Sys. Se. Minnesota*, 2023 WL 5000255, at *7 (D. Minn. Aug. 4, 2023).

Appellant simply did not sufficiently plead facts to maintain her Title VII religious discrimination claim because there are no facts that give rise to an inference of discrimination. In her Brief, Appellant again resorts to wordplay and mischaracterizing her Complaint.  Appellant argues she pled facts giving rise to an inference of discrimination because she allegedly pled "Secular speakers were allowed to address the student using the words Plaintiff was forbidden from using. ¶ 5."  However, ¶ 5 does not support this allegation in any way.  Additionally, as mentioned before, nowhere in her Complaint does Appellant allege teachers with

different religious beliefs were permitted by the School District to not follow the directive. Therefore, this matter is distinguishable from *Cole v. Group Health Plan, Inc,* wherein the plaintiff at least made the allegations. 105 F.4th 1110 (8th Cir. 2024). In *Cole*, the plaintiff alleged there were other employees who were granted religious exemptions to a vaccine mandate as religious accommodations. Nowhere in the operative Complaint does Appellant make such an allegation. In this sense, the district court was not inquiring about the *validity* of comparators; instead, the Court addressed the fact that there *were no* comparators.

### iii.    *The requested accommodation would result in hardship*

Requiring the violation of another law is an undue hardship. *Seaworth v. Pearson*, 203 F.3d 1056, 1057 (8th Cir. 2000). As a matter of law, Appellant's requested accommodation is an undue hardship. *Id.* Here, the District's directive was instituted to comply with federal (and possibly state) anti-discrimination laws. Plaintiff's alleged proposed accommodation-to be allowed to refer to students by names and pronouns that do not conform with their gender identity, would be a violation of discrimination laws. *See Kluge v. Brownsburg Community School Corporation*, No. 1:19-cv-02462-JMS-KMB, 2024 WL 1885848, (S. D. Ind. April 30, 2024). Accordingly, as a matter of law, the accommodation Appellant sought is unduly burdensome and no amount of discovery or fact finding will negate this fact.

The *Kluge* court recognized that threat of litigation is an undue hardship which relieves an employer of a duty under Title VII to grant a religious accommodation, stating

> **Title VII does not require an employer to grant a religious accommodation that would place it on the "razor's edge" of liability**. *Matthews v. WalMart Stores, Inc.*, 417 F. App'x 552, 554 (7th Cir. 2011). **Rather, "the threat of ... disrupting litigation may in some circumstances constitute undue hardship**." *Minkus*, 600 F.2d at 83 (7th Cir. 1979).

*Id* at \*20(emphasis added). The *Kluge* court noted several successfully litigated claims brought against school districts under Title IX for transgender discrimination. There, the court stated:

> **The Court finds that the existence of the Last Names Only Accommodation placed BCSC at risk of substantial and disruptive litigation, all the more serious given that Title IX violations place the entire school's funding at risk. The Court finds that the Last Names Only Accommodation, because of its unreasonable risk for substantial and disruptive litigation, imposed substantial increased costs on BCSC and was hence an undue burden as a matter of law, both independently and when viewed in combination with the harm and disruption to the school's business**.
>
> \*\*\*
>
> As the Supreme Court held in <u>*Groff*</u>, undue hardship is to be viewed within the context of a particular business, not a particular employee. **The Court compares the cost to BCSC's mission, not Mr. Kluge's. BCSC could either support its transgender students in pursuit of its mission and comply with the law, or accede to Mr. Kluge's accommodation and risk harm to students and**

**the learning environment and/or substantial and disruptive litigation.** As BCSC explained to its teachers, its "goal is not to change your personal beliefs"; rather, "when you work in a public school, you sign up to follow the law." [Filing No. 120-20 at 4; Filing No. 120-20 at 10.] **The law of Title VII does not require BCSC to continue an accommodation that actually resulted in substantial student harm, and an unreasonable risk of liability, each sharply contradicting the school's legally entitled mission to foster a supportive environment for *all*. The Last Names Only Accommodation was an undue burden to BCSC as a matter of law.**

*Id.* at *22 (emphasis added). Accordingly, even if this Court does not find allowing teachers to refer to students by names and pronouns that do not conform with their gender identity, would be a violation of discrimination laws, it certainly would expose the School District to costly litigation.

Appellant's Complaint only alleges the School District discriminated against her for not granting one accommodation, namely, "Plaintiff's request to use legal names, last names, or gender conforming names, consistent with her religious beliefs." (App. 29; R. Doc. 1, at 22, ¶183). Nowhere in the Complaint does Appellant assert a second accommodation, namely "the transfer of a male identifying student to a health class consistent with their identity." However, this new accommodation would clearly be discriminatory because it would move trans-male students out of her girl's PE class, but would not move trans-females into her class. Appellant's new requested accommodation (which was not pled) is to kick all transgender students out of her class. It is difficult to imagine a more discriminatory

practice. If a teacher's religious beliefs forbid mixing of races, it would no doubt be illegally discriminatory to accommodate the teacher by kicking all minority students out of the teacher's class. Appellant's proposed accommodation is flagrantly discriminatory and illegal, and it fails to establish anything viable on the face of the Complaint.

Accordingly, the district court did not err in dismissing Appellant's religious accommodation claim. By extension, because Appellant did not plead facts giving rise to an inference of discrimination and the alleged accommodation is patently discriminatory, this Court should affirm the district court's dismissal of Count 5.

**B.     The district court did not err in dismissing Appellant's Title VII claim for religious discrimination under Count 6 because Appellant failed to show she was engaged in protected activity.**

To establish retaliation under either Title VII, a plaintiff must prove (1) she engaged in statutorily protected activity, (2) suffered an adverse employment action, and (3) that the engagement in a protected activity is the but-for cause of the adverse employment action. *See Blackwell v. Alliant Techsystems, Inc.*, 822 F.3d 431, 436 (8th Cir. 2016).

Under Title VII, an employee engages in protected activity when she either (1)"oppose[s] any practice made an unlawful employment practice by [Title VII]" or ma[kes] a charge, testifie[s], assist[s], or participate[s] in any manner in an investigation, proceeding, or hearing under [Title VII]. 42 U.S.C. § 2000e–3(a).

"The two clauses of this section typically are described, respectively, as the opposition clause and the participation clause." *Barker v. Mo. Dep't of Corr.*, 513 F.3d 831, 834 (8th Cir. 2008) (internal quotations marks omitted). Under Title VII, "protected activity" includes opposition to discriminatory employment practices prohibited under Title VII. *Bakhtiari v. Lutz*, 507 F.3d 1132, 1137 (8th Cir. 2007). "Merely requesting a religious accommodation is not the same as opposing the allegedly unlawful denial of a religious accommodation." *Equal Emp. Opportunity Comm'n v. N. Mem'l Health Care,* 908 F.3d 1098, 1102 (8th Cir. 2018). Notably, simply refusing to comply with the conflicting employment requirement is also not "oppos[ing]" an unlawful "practice" under Title VII. *See Equal Emp. Opportunity Comm'n v. Kroger Ltd. P'ship I*, 608 F. Supp. 3d 757, 790 (E.D. Ark. 2022).

Appellant pled that she engaged in activity protected by Title VII in her request for an accommodation and the exercise of her religious beliefs and practices. However, she did not plead (as necessary to show she engaged in statutorily protected activity) that she opposed the allegedly unlawful denial of a religious accommodation. Her allegation is that the Defendant merely retaliated against her because of her religious accommodation request. However, simply requesting an accommodation does not equate to opposing a practice made unlawful by Title VII. Therefore, she did not engage in any activity protected by Title VII, and she failed

to state a claim because she did not meet the necessary elements to have a claim for retaliation under Title VII.

Accordingly, the district court did not err in dismissing Appellant's claim under Count 6.

**IV.**  **The district court did not err in dismissing Appellant's state law claims (Counts 7 and 8) when they were preempted by the Missouri Human Rights Act and when there is no precedent for allowing claims for money damages under the Missouri Constitution.**

    **A.**    **The Missouri Human Rights act bars Appellant's state law claims.**

The Missouri Human Rights Act (MHRA) states: "This chapter, in addition to chapter 285 and chapter 287, shall provide the exclusive remedy for any and all claims for injury or damages arising out of an employment relationship." RSMo § 213.070. Chapter 285 is the Worker's Compensation Act and Chapter 287 is the Public Employee Whistleblowers Act.

In *Brandon v. Bd. of Educ. of City of St. Louis*, 2023 WL 4104293 at *19 (E.D. Mo. 2023), the defendant asserted that claims could not be brought by an employee against an employer under RSMo. §1.302 as the claims are preempted by the MHRA declaration that it is the exclusive remedy for claims arising out the employment relationship. The *Bradon* court, went to great lengths to discuss whether the MHRA pre-empted claims under RSMo. §1.302.

In a lengthy discussion of statutory interpretation principals, the court ultimately found "the text of the Missouri Human Rights Act clearly purports to

offer, along with two other statutes, the *exclusive* remedy for claims arising from an employment relationship. RSMo. § 213.070. In line with this finding, the court held that no cause of action can be brought under RSMo. § 1.302 by an employee against an employer." Of note, the this Court has held the Federal RFRA is pre-empted by Title VII; therefore, Federal RFRA claims in the employment context are pre-empted. *Harrell v. Donahue*, 638 F.3d 975, 984 (8th Cir. 2011).

In this case, Appellant attempts to assert claims under RSMo § 1.302 against her former employer. *Brandon* makes clear that she cannot bring this cause of action in the employment context. Her sole remedy for her claim is the MHRA. While Appellant did not assert any violations of the MHRA, she could have asserted these claims had she so chosen. Furthermore, extending the reasoning of the *Brandon* decision to her claim under Missouri Student Religious Liberties Act (RSMo § 160.2500), this claim should also be dismissed. She is asserting this claim against her former employer for an alleged act of discrimination that occurred in the course of her employment. This clearly fits with the MHRA being her exclusive remedy provision. Accordingly, the Court should affirm the district court's dismissal of Counts 7 and 8.

### B. There is no right to damages under the Missouri Constitution.

Appellant alleges she should be entitled to relief because "Missouri's Constitution is facially more broad than the federal First Amendment." However,

Missouri appellate authority supports the conclusion that a plaintiff may not pursue a claim for money damages directly under the Missouri Constitution. *See Moody v. Hicks*, 956 S.W. 2d 398 (Mo. App. 1997). Similarly, in *Collins-Camden Partnership v. County of Jefferson*, the Missouri Court of Appeals concluded, "No Missouri precedent exists permitting suits for monetary damages by private individuals resulting from violations of the Missouri Constitution." 425 S.W.3d 210, 214 (Mo. App. 2014).

Accordingly, the district court did not err in denying Appellant relief under the Missouri Constitution by dismissing Counts 7 and 8.

## C.     The district court did not abuse its discretion in not allowing Appellant to replead.

Appellant alleges the district court abused its discretion because the dismissal was with prejudice and "Bachman never had the opportunity to amend." This argument ignores the Federal Rules of Civil Procedure, and the opportunities Appellant chose to ignore. Rule 59(e) provides the parties with an opportunity to file a motion seeking to alter or amend a judgment within 28 days of the entry of a judgment. "Rule 59(e) motions serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence." *Innovative Home Health Care, Inc. v. P.T. – O.T. Associates of the Black Hills*, 141 F.3d 1284 (8th Cir. 1998). Appellant here could have filed a motion with the district court alleging the dismissal with prejudice was an abuse of discretion – she did not. Similarly, under

Rule 60(a) "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, <u>or other part of the record</u>. (emphasis added). The court may do so on motion or on its own, with or without notice." Rule 60(b) provides the grounds for relief. Like Rule 59, Appellant could have filed a motion raising her arguments and requested leave to amend her Complaint but did not. Accordingly, it is a mischaracterization to blame the district court for not allowing Appellant an opportunity to amend when Appellant herself never asked – either before the dismissal or afterward. Accordingly, the district court did not abuse its discretion in not permitting Appellant to replead.

Therefore, based on the foregoing, the district court did not err in dismissing Appellant's state law claims (Counts 7 and 8) when they were preempted by the Missouri Human Rights Act and when there is no precedent for allowing claims for money damages under the Missouri Constitution.

## <u>CONCLUSION</u>

Appellant's Complaint suffers from numerous pleading failures, as the district court pointed out. Appellant failed to plead her case with anything more than self-serving, conclusory allegations devoid of factual support. Appellant simply cannot meet the bar to establish she was discriminated against in any way, that Appellees acted with animus or discriminatory intent, or that they imposed on her free exercise

of her beliefs. For the reasons stated herein, this Court should affirm the district court in all respects.

**FISHER, PATTERSON, SAYLER & SMITH, LLP**


/s/ Paul F. Gordon

| | |
|---|---|
| Steven F. Coronado | MBN 36392 |
| Paul F. Gordon | MBN 47618 |
| Jacob D. Bielenberg | MBN 72319 |

9393 W. 110th, #300
Corporate Woods, Bldg. 51
Overland Park, KS 66210
Telephone: (913) 339-6757
Facsimile: (913) 660-7919
scoronado@fpsslaw.com
pgordon@fpsslaw.com
jbielenberg@fpsslaw.com
ATTORNEYS FOR APPELLEES

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS,
## AND TYPE STYLE REQUIREMENTS

Appellant certifies that this brief complies with Federal Rules of Appellate Procedure 27 and 32:

1.     This brief complies with the type-volume limitation of Fed. R. App. 32(a)(7)(B):

    a.     This brief contains 8,777 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(A)(7)(B)(iii);

    b.     This brief complies with typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6); and

    c.     This brief has been prepared in a monospaced typeface using Microsoft Word in 14-point Times New Roman font.

2.     This brief has been scanned for viruses with AV Defender Antivirus software, and the brief is virus free.

/s/ Paul F. Gordon
Attorney for Defendants/Appellees